## ZEHNER v. MILNER ET AL.

[No. 21,311. Filed February 26, 1909. Rehearing denied June 11, 1909.]

1. DRAINS.— *Mill-Dams.*— *Eminent Domain.*— *Public Utility.*— Where a mill-dam was erected upon a site condemned for the purpose of operating "a gristmill" for toll, and the mill has since been operated as a commercial mill and not as "a gristmill" for toll, it has ceased to be of "public-utility" and the State, in the exercise of its power of eminent domain, may authorize the removal of such dam, upon payment of the damages, in order to provide proper drainage for the district in which the dam is located. Montgomery, J., dissenting. p. 497.

2. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 501.

3. EVIDENCE.—*Reports of Drainage Commissioners.—Drains.— Damages.*—In a drainage proceeding in the circuit court, the report of the drainage commissioners is admissible in evidence (§6151 Burns 1908, Acts 1907, p. 508, §17). p. 501.

4. COURTS.— *Circuit.*— *Jurisdiction.*— *Drains.*— The circuit courts have original jurisdiction of the subject-matter of a drainage proceeding filed therein. p. 501.

5. APPEAL.—*Briefs.*—The appellant's brief must show that the rulings complained of are properly presented by the record. p. 501.

From Marshall Circuit Court; *George W. Burson*, Special Judge.

Drainage petition by Franklin E. Milner and others, against which Margaret L. Zehner remonstrates. From a judgment for petitioners, remonstrant appeals. *Affirmed.*

*Henry L. Unger* and *E. C. Martindale*, for appellant.
*John W. Parks* and *Harley A. Logan*, for appellees.

JORDAN, C. J.—On October 14, 1903, Jacob Keyser and other landowners petitioned the Marshall Circuit Court to establish a certain proposed public ditch for the purpose of draining their lands and the lands of others, to the amount of some fifty thousand acres, situated in Marshall county, Indiana. The proceedings were instituted under the statute of

the State then in force pertaining to the establishment and construction of public drains under the jurisdiction of the circuit courts. William Zehner, a landowner affected by the proceedings, among others, was made a party defendant. It appears that the cause, upon various motions, was kept on the docket of the court until the drainage act enacted in 1907 (Acts 1907, p. 508, §6140 *et seq.* Burns 1908) was in force and effect. After the latter act was in force, the preliminary report, filed under the act of 1905, appears to have been set aisde, and the matter was again referred to the drainage commissioners for final report under the act of 1907. These commissioners made and filed a report, making assessments, etc., for the damages growing out of the construction of the drain in question. It is shown by this report that the proposed work of drainage is to consist of widening, deepening, straightening and changing the channel of Yellow river, a watercourse, cutting off bends to produce falls where necessary in such river, the drain to follow the old channel, and to remove all logs, stone and other material in order that there might be a full and free flowage of water. The Zehner mill-dam, here in controversy, was, as stated by the commissioners in their report, an obstruction in said river, and was to be removed, in the construction of the work, to the width of not less than fifty feet. William Zehner, who had appeared to the previous report and remonstrated against the same, in the meantime died, and his widow (appellant herein), who was the sole legatee and devisee under his will, and who by virtue thereof became the owner in fee of all the lands owned by her said husband, was substituted as a party. On February 20, 1908, she appeared in court and remonstrated against the report then on file, upon the grounds stated in her remonstrance. Therein she particularly described the parcels of land which comprised what was known as the "Plymouth water-mill property." She averred that "on said premises is located a gristmill operated by water-power produced by

a dam across Yellow river, which dam is on said premises;''
that at that point she owned the land on both sides of the
river, the dam being about seven feet high; that her
right to maintain the dam was acquired by her remote
grantors under a certain *ad quod damnum* proceeding had in
the Marshall Circuit Court in the year 1852; that said pro-
ceedings were commenced by Austin Fuller, and that he and
his grantees, immediate and remote, have ever since said
year continuously maintained said dam and water-power;
that she and her grantors, immediate and remote, have main-
tained uninterruptedly for more than forty years said dam
at the height of about seven feet, that being the height of the
dam at this time; that ''the proposed drain, if established
and constructed, will pass through the center of said dam,
the excavation thereof, as set forth in said report, through
said dam being fifty feet wide at the bottom and eighty feet
wide at the top and over fifteen feet deep, which excavation,
if made, will totally destroy said dam and the water-power
produced thereby; that said water-power in its present con-
dition will afford ample power to propel the machinery neces-
sary to grind and manufacture into flour, meal and feed 300
bushels of grain per day every working day of the year, with
only nominal expense for the maintenance thereof; that this
remonstrator has erected a large, commodious flouring mill,
capable of grinding said amount of grain per day, which mill
is operated solely by the power produced by said dam; that
said dam and water-power are of the value of $25,000, which
will be totally destroyed if said drain is constructed; that in
said drainage commissioners' report the damages awarded to
this remonstrator's lands are $6,000.

Various other grounds of remonstrance are set forth. The
petitioners filed a demurrer to each paragraph of the re-
monstrance and to each specification thereof. This demurrer
was overruled, and they replied by a general denial. Upon
the issues joined there was a trial by the court, and a finding
in favor of the petitioners that the proposed work be estab-

lished and constructed as prayed for and reported by the commissioners, and appellant was awarded damages in the sum of $7,000, on account of the contemplated destruction of the mill-dam. Motion by appellant for a new trial, assigning various reasons therefor, was overruled, to which ruling she excepted and prayed an appeal to the Supreme Court. Thereupon the court ordered and adjudged as follows: "It is further ordered and adjudged by the court that Margaret L. Zehner recover damages, by reason of the construction of said ditch, in the sum of $7,000, as damages to a certain mill property described in the remonstrance, and that said sum be paid out of the funds collected on account of such proposed work by the construction commissioners. It is further adjudged by the court that the report of the assessments be approved as modified, that the ditch will be of public utility and its construction practicable, that the aggregate benefits assessed will be greater than the cost of construction, costs and damages, that said proposed work be established in accordance with the report of the commissioners, and the same be constructed according to the plans and specifications set forth in said report, as modified."

Percy J. Troyer was appointed by the court as construction commissioner, and gave bond accordingly.

In this appeal appellant has assigned as errors: (1) The insufficiency of the petition to constitute a cause of action; (2) that the court had no jurisdiction of the subject-matter; (3) that the court erred in overruling her motion for a new trial. Other assignments are made, which need not be noted.

Appellant contends that she had, as shown by her answer or remonstrance, acquired through her remote grantors the right to maintain the dam in question across Yellow river, as granted under the *ad quod damnum* proceedings set out in her remonstrance. The record in the *ad quod damnum* proceedings was introduced in evidence by appellant in support of her remonstrance. This record discloses that Austin Fuller, in the year 1852, instituted said proceedings by filing in

the Marshall Circuit Court a petition, whereby he prayed that a writ of *ad quod damnum* be issued and a jury summoned and impaneled by the sheriff of the Marshall Circuit Court to inquire into the damages sustained by certain-mentioned property owners by reason of the back water from the dam in question, and that he be granted leave to continue said dam. The writ appears to have been issued, a jury of twelve men impaneled by the sheriff, an inquest held, and a finding returned by the jury. The jury, among other things, found that the gristmill in question was of great public utility, and that the lands in the immediate neighborhood were more benefited in value by the existence of said dam and mill than any injury done to them by the back waters from said dam, consequently no damages were awarded. The finding of the jury was by the court in all things confirmed, and it was adjudged by the court "that said petitioner, his heirs and assigns have leave to continue said mill and mill-dam with a head of water not exceeding six feet, and that the petitioner pay the cost."

Appellant contends that the right of said Austin Fuller, his heirs and assigns, to maintain the mill-dam and mill-pond for said purpose became and was a vested right in them, for the uses and purposes therein set forth, and that such right became and was vested in her as the successor of said Austin Fuller in the ownership and proprietorship in such real estate and mill property, and that such rights have ever since been exercised and enjoyed by said Fuller and his several grantees, including appellant.

It is insisted by her counsel that property once acquired for a public use under the law of eminent domain cannot again be taken and appropriated for a different public use, and that this principle is violated by the removal of part of the dam, as shown by the report of the commissioners.

Summarizing the evidence upon some of the material

points shows that there are some twelve drains or ditches which empty into Yellow river. This river appears to be obstructed by six old mill-dams or parts thereof, including the Zehner mill-dam. From its forks it has a well-defined channel, which is obstructed by the dams and other obstructions. There are many acres of bottom-land along the river which will be benefited by the proposed improvement. These lands are overflowed when the river rises two or three feet. Some twenty-five public highways are also affected, and they will be benefited by the improvement. These roads are overflowed sometimes to the depth of two feet, which impedes the travel thereon by rural mail carriers and other travelers. In many places between the city of Plymouth, Marshall county, Indiana, and the terminus of the ditch the water stands in pools and marshes. There are many bayous scattered along the river on down near to the Zehner dam. This dam is within the city of Plymouth, a city of 4,000 inhabitants. In dry weather a scum gathers on these pools and bayous, and the stagnant water creates bad odors, and in some of them the water stands the entire year. They have no outlets except by the river in question.

There is much evidence to show that the work will be of · great public utility and benefit, and improve the health of the community. The dam in controversy very much impedes and obstructs the flow of the water. As it now stands, it is two hundred feet wide and six feet, four inches high. The mill appears originally to have been constructed some time prior to the year 1852, and was operated as a toll-mill at the time the *ad quod damnum* proceedings were instituted. At the time appellant's husband purchased this mill it was a three-story building and was operated by steam. At that time its capacity was 100 barrels of flour per day. This mill was destroyed by fire November 6, 1896, and for some time prior to the latter year was operated by steam. After the fire it was rebuilt, and now has a steam-engine attached, and is operated by steam when the water in the river becomes low. It is

shown to have a capacity to grind over sixty barrels of flour in twenty-four hours, and does a general mercantile or commercial business. It does some custom grinding for farmers in the vicinity. Wheat is purchased by the operator of the mill and manufactured into flour, which is sold upon the market. It is no longer operated as a gristmill for toll. The evidence in regard to the value of the dam and water-power varies in amounts, running from $5,000 and over. One witness appears to have placed its value at $25,000, but from his own admissions he did not show that he was well qualified to express an opinion as to the value of the dam in question. Some of the witnesses, who were practical mill men, fixed the value at $6,000; some at $5,000. None of those who were practical mill men and acquainted with the value of such property fixed the value at over $8,000.

In *Hankins* v. *Lawrence* (1846), 8 Blackf. 266, this court recognized and sustained the right of the State to extend the power of eminent domain to persons engaged in operating gristmills to secure the lands of others for the construction and maintenance of dams for the operation of their mills. This right appears to have been upheld on the ground that such mills were of public utility. The court in that case said: "Since the commencement of our state government we have always had statutes authorizing the writs of *ad quod damnum.* By virtue of such writs persons are enabled to procure the lands of others, if necessary, for the abutment of dams for gristmills, without the owner's consent, by making compensation. These statutes are supported on the ground of the benefit of such mills to the public."

In the earlier days of the country, when gristmills were few, both the legislature and the courts recognized them as of public use and benefit. Grain was brought to them by the people of the surrounding country, and was ground into flour and meal for domestic uses. A certain portion of the grain was taken as toll for grinding. As a rule, the owners of these mills were required to serve the public impartially,

hence the reason for extending to them the right of eminent domain.

We believe but one conclusion can be reached from the evidence in respect to appellant's mill-dam, and that is that the maintenance thereof in the operation of her mill has ceased to be of public utility. The mill is no longer "a gristmill," operated for toll, but is run wholly for private use or benefit, doing, as shown, a large, commercial business in the manufacture and sale of flour. Appellant's right to maintain this dam has certainly ceased to be of public use or advantage. Certainly, as against the State, she cannot successfully assert her right to maintain it for her own private convenience and use, and thereby prevent or retard the construction of the work in question by the method proposed. No doubt the dam is of value to her, for the reason that it enables her at times, when it is necessary, more convenient and cheaper, to shift the motive power from steam to water, and *vice versa;* but, viewed in any light under the facts, the dam, as it now exists as an attachment to the mill, serves a private use and nothing more, and the State has the right to remove it, if necessary, in the furtherance of the plans and methods for the proposed work, upon the making of just compensation. The following authorities support our holding: *Talbot* v. *Hudson* (1860), 16 Gray 417; 2 Farnham, Waters and Water Rights, §182, and authorities cited; 1 Lewis, Eminent Domain (2d ed.), §271; *Jessup* v. *Loucks* (1867), 55 Pa. St. 350.

The broad doctrine advanced by appellant, that, her mill having once been devoted to a public use, and her right to maintain the dam in connection therewith having been acquired under the law of eminent domain, the State can neither remove it nor appropriate it in any manner to another public use on making proper compensation, is adverse to the following authorities: *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 37 L. R. A. 189; *Bal-*

*timore, etc., R. Co.* v. *Board, etc.* (1901), 158 Ind. 260, and authorities cited in the opinion upon the rehearing, page 276.

Appellant's right to maintain the dam, under the *ad quod damnum* proceedings, and thus cause the waters to flow back over the lands of the riparian owners, is a question not involved in this appeal; but her right, under the facts in this case, to maintain it as an obstruction in the river, and prevent the State from removing it in order successfully to carry out the plan of the proposed improvement, upon the making of just compensation to her, has no support under the law.

An examination of the evidence shows that the finding of the lower court is thereby fully sustained on all material points. Possibly there may be some room for argument that the amount of damages awarded to appellant is too low, but the trial court had all the witnesses who testified in regard to this issue before it, and no doubt gave full credit and weight to their evidence, and as we have no authority to weigh the evidence, and as it fully sustains the trial court's finding upon the question of damages, we cannot disturb the judgment upon that issue. Appellant claims that the court erred in admitting in evidence the report of the drainage commissioners. There is no merit in her contention, for it will be noted that by section seventeen of the drainage act of 1907 (Acts 1907, p. 508, §6151 Burns 1908), the reports of the drainage commissioners are made *prima facie* evidence of the facts therein set forth. Appellant's insistence that the circuit court was not, under the law, invested with jurisdiction of the subject-matter is wholly untenable. Some other points are raised in respect to the court's rulings in sustaining objections made by appellees to certain questions propounded by appellant to witnesses. There is a failure, however, on appellant's part to show in her brief that the rulings complained of are properly presented by the record, hence we pass them

without consideration.   Upon a full review of the case as presented, we find no error.   Therefore the judgment is affirmed.

Montgomery, J., dissents.