# PRAIRIE PIPE LINE COMPANY, Appellant, v. BENJAMIN SHIPP et al.

### In Banc, December 18, 1924.

1. **APPELLATE JURISDICTION**: Condemnation. A judgment for the condemnation of a right of way for a pipe line across and under defendants' lands and awarding them damages, involves title to real estate, and the appeal therefrom is to the Supreme Court.

2. **CONDEMNATION**: Validity of Statute Conceded: Constitutional Question Eliminated. A concession by the parties that the statute upon which is based a proceeding to condemn a right of way for a pipe line over and across private land is valid, in so far as it authorizes private corporations to condemn land for the laying of its pipe line and the transportation therein of crude petroleum through this State, eliminates from consideration what might otherwise present a serious question under the limitations of the Constitution.

3. ———: Pipe Line: Measure of Damages: General Rule. No general rule as to the measure of damages to the landowner caused by the laying of a pipe line for carrying crude oil, applicable to all cases, can be framed, because of variant facts not subject to classification. A general rule, announced in text-books and treatises, that the damages should be direct and certain and such as may be known or may be reasonably expected to result from the invasion of private premises and the consequent disturbance of the dominion of the owner and the construction by the condemnor upon the premises invaded of the facilities to be employed, lends little aid in estimating the damages in a concrete case, except to mark the boundaries of consideration.

4. ———: ———: ———: Difference in Value of Land. The determinative tests in ascertaining the damages in railroad condemnation cases are: first, the damage done by the absolute taking of the right of way; and, second, the difference between the value of the land before the taking and thereafter; and this rule is applicable to the condemnation of a right of way for an oil pipe line, except that the damages assessed for the taking of the right of way

itself must be minimized by the fact that the landowner is not wholly deprived of the use of the surface of the right of way. The true rule is that when a part only of the land is taken the measure of damages is the difference between what was the fair market value of the entire tract before and after the appropriation, in view of the use to which the part condemned should thereafter be applied.

*Held*, by DAVID E. BLAIR, J., dissenting, that the measure of damages is not the difference in the market value of the whole farm, but only of the forty-acre tract through which the pipe line runs, since there is no actual severance of one part of the farm from the rest by the construction of an under-surface pipe line, where the strip taken is required to be left open and uninclosed so as not to interfere with the cultivation of either farm as an entire tract.

5. ———: ———: **Evidence of Damages: Inadequate as to Particular Injury: Adequate as to Difference in Market Value.** The appellate court will not disturb a judgment awarding damages supported by substantial evidence. Notwithstanding the damages occasioned by the installation of the pipe line are negligible, and there is no substantial evidence as to the extent of the damages occasioned by the increased difficulty to be encountered in cultivating the land by reason of ridges raised on the right of way by laying the pipe line, or occasioned by deterioration of the fertility of the soil on the right of way by the leaving thereon of non-arable clay, or occasioned by the frequent patrolling of the land by the condemnor's employeees, if the evidence is substantial that the effect upon the land as a whole, other than that occupied by the right of way, is to decrease its market value, in the amount found by the jury, not only should the case be submitted to the jury, but its verdict will not be disturbed on appeal.

*Held*, by DAVID E. BLAIR, J., dissenting, that the opinions of the difference in the market value of the farm caused by the laying of the pipe line were based on the possible or probable leaking of oil from the pipes, which might not happen, which was therefore purely speculative damages, and an allowance of $1000 to one defendant for an appropriation of an eight-foot strip 1277 feet long and of $1400 to another for an eight-foot strip 2221 feet long was grossly and unreasonably excessive.

6. ———: ———: **Speculative: Irrelevant Evidence: Proper Instructions.** Where the instructions properly and clearly directed the jury that the damages to be found must be limited by the injury caused by the laying of the pipe line and the depreciation resulting therefrom in the market value of the residue of the land, and the verdict itself bears evidence that it was based on these authorized

concerning speculative damages which the appropriator has obligated itself to pay upon their infliction will not work a reversal.

*Held*, by DAVID E. BLAIR, J., dissenting, that the admission of evidence that in laying the pipe line the condemnor's employees did not confine themselves within the eight-foot strip taken but trespassed upon the adjoining lands, and that oil sometimes leaked from the pipe and "killed" the soil, was error.

Citations Pertaining to Subjects of Headnotes: 1, Courts, 15 C. J. par. 513; 2, Constitutional Law, 12 C. J. par. 188; 3, Eminent Domain, 20 C. J. par. 186; 4, Eminent Domain, 20 C. J. par. 189; 5, Appeal and Error, 4 C. J. -pars. 2846, 2858; Eminent Domain, 20 C. J. par. 407; 6, Appeal and Error, 4 C. J. pars. 2970, 2974.

Appeal from Randolph Circuit Court.—*Hon. Allen W. Walker*, Judge. .

AFFIRMED.

*T. J. Flannelly, Major J. Lilly* and *S. J. & G. C. Jones* for appellant.

(1) The verdict and finding of the jury is grossly excessive, unreasonable, unfair and unjust. Defendants' land is not taken, the possession, use and enjoyment are still retained by defendants. Bray v. Land Const. Co., 203 Mo. App. 644; Met. St. Ry. Co. v. Walsh, 197 Mo. 392; Calor Oil Co. v. Franzell, 36 L. R. A. (N. S.) 456; Postal Telegraph Co. v. Peyton, 3 L. R. A. (N. S.) 333. (2) It was error to admit over plaintiff's objections evidence to the effect that oil might escape from the pipe line. Such evidence was purely speculative. To say that oil might or might not escape from the lines is purely speculation and nothing else, especially so when there is no evidence showing that such is the general tendency. Met. St. Ry. Co. v. Walsh, 197 Mo. 329; Railroad v. Mendonsa, 193 Mo. 518; Railroad v. McGrew, 104 Mo. 282; Mathews v. Railroad, 121 Mo. 298; Chicago & I. C. Railroad Co. v. Hunter, 128 Ind. 213; Elliott on

Railroads, secs. 991, 991a, 991b. (3) It was error to overrule plaintiff's objections to testimony offered by defendants relating to the depreciation in the market value of defendants' land on account of the condemnation sought. Said witnesses did not show sufficient knowledge and qualifications to express an opinion in that respect, and the hypothetical questions, if such they may be called, did not embrace and take into consideration all of the elements embraced in the pleadings and in the case. Union Elevator Co. v. Surburban Ry. Co., 135 Mo. 375; Railroad v. Mendonsa, 193 Mo. 523. (4) The instructions broadened the issues and permitted the jury to take into consideration inconveniences and matters of a temporary nature which did not permanently depreciate the market value of defendants' farms. Redding v. Railroad, 165 Mo. App. 130; Craton v. Huntzinger, 163 Mo. App. 718; Maynard v. Railroad, 155 Mo. App. 354; Christian v. Ins. Co., 143 Mo. 469; Bray v. Land Const. Co., 203 Mo. App. 644; Calor Oil Co. v. Franzell, 36 L. R. A. (N. S.) 456. (5) The court erred in refusing instructions requested by the plaintiff properly limiting the inquiry of damages to that part of defendants' farms which were actually affected by the condemnation. Elliott on Railroads, secs. 990, 992; Lexington v. Long, 31 Mo. 369.

*Hunter & Chamier* and *Jerry M. Jeffries* for respondents.

(1) The verdict is not excessive. Gibson's farm consists of one hundred forty acres and very valuable land worth, before the easement was taken, at least $150 per acre. The easement passes entirely across same, between his residence and the public road. Shipp's farm consists of one hundred eighty acres and is very valuable land, worth, before the easement was taken, at least $125 per acre. The easement passes across the farm near the improvements. Shipp's damage was fixed at

$1000 or $5.55 an acre. Gibson's damage was fixed at
$1400 or ten dollars per acre. Defendants are entitled
to recover not only for the value of the land taken, but
also for damages to the remainder of their farms. Pratt
v. Ry. Co., 130 Mo. App. 175; Railroad v. McGrew, 104
Mo. 282. (a) It is with great reluctance that appellate
courts undertake to interfere with verdicts of juries
on the grounds of excessiveness in condemnation proceed-
ings. Met. St. Ry. Co. v. Walsh, 197 Mo. 421; Railroad
v. Brick Co., 198 Mo. 712. (b) The extent of the ease-
ment and use to be made of it and how used is the very
essence of the cause for damage. The limitation that
plaintiff would pay for any damages to adjacent land
by reason of oil escaping, lessened the damages. While
the jury were hearing and considering these things it
had a right to know all about the use to which the ease-
ment was to be put. Mathews v. Railroad, 121 Mo.
298; Railroad v. McGrew, 104 Mo. 282; Railroad v.
Donovan, 149 Mo. 93; Railroad v. Shoemaker, 160 Mo.
425. (2) The objections to the hypothetical questions
were not sufficient and many of the witnesses testified as
to value without any objections being made. Our courts
have recognized this manner of proving the damages in
condemnation proceedings. Railroad v. Brick Co., 198
Mo. 709; Met. St. Ry. Co. v. Walsh, 197 Mo. 392; Rail-
road v. Vleiez, 234 Mo. 471. (3) The evidence was
that the taking damaged each farm in its entirety, and
the measure of damages is the value of the land taken
and damage to the remainder of the farm. Ry. Co. v.
Carton R. E. Co., 204 Mo. 565; Railroad v. McGrew,
104 Mo. 282. The instructions recited the various items
to be considered in assessing the damages and were
proper. Railroad v. Brick Co., 198 Mo. 712.

WALKER, J.—In February 1921, the plaintiff filed
a petition in the Circuit Court of Randolph County, un-
der Section 1791, Revised Statutes 1919, for the con-
demnation of a right of way for a pipe line across and

under certain tracts of land in that county, one of which was owned by Benjamin Shipp and wife and the other by L. B. Gibson and wife, who are the defendants herein and own their respective lands by the entirety.

Commissioners were appointed in conformity with the prescribed statutory procedure who assessed nominal damages in favor of the owners of the land. The plaintiff proceeded under this judgment to lay its pipe line. The defendants excepted to the report of the commissioners, and it was set aside, and upon a trial before a jury a verdict was returned in favor of Shipp and wife for $1000; and in favor of Gibson and wife for $1400. From this judgment an appeal was perfected by the plaintiff to the Kansas City Court of Appeals. Under our ruling in Springfield S. W. Ry. Co. v. Schweitzer, 246 Mo. 122, and Moberly v. Lotter, 266 Mo. 457, this case was transferred to the Supreme Court on the ground that the title to real estate was involved (240 S. W. 473).

The petition is in the conventional form employed in cases of this nature. It asks, *inter alia,* that a strip of land eight feet in width may be condemned across the lands of the defendants for the purpose of permitting the plaintiff—a Kansas corporation engaged in the transportation of oil through this State—to lay a pipe line underneath the surface of the lands for plaintiff's use in its business. The pipe line to be laid in such a manner as to not interfere with defendants' access to or cultivation of the soil or the drainage of the lands or of tracts adjacent thereto, except during such times as the plaintiff may necessarily be engaged in laying, removing or repairing the line. The plaintiff, by its pleading, obligates itself in the event of the condemnation, to afford the defendants access at all times to the lands and their right to the use of the same as parts of their respective farms, in the same manner and to the same extent as if said line had not been laid subject to the right of entry for the purposes stated. Plaintiff further

obligates itself to pay defendants any damages to the lands by reason of the installing or the repairing of said line by plaintiff; or for any damages that may subsequently be done to growing crops on the right of way from time to time, or by the laying of additional pipe lines or the repairing of those laid, or by the escape of oil upon the right of way or upon adjacent lands.

The pipe line laid across the Shipp farm is 1277 feet long, eight feet wide and embraces an area of .235 acres; the line across the Gibson farm is 2221 feet long, eight feet wide and embraces an area of .408 acres. The estimated value of the Shipp land, which consists of one hundred eighty acres, before the installation of the pipe line, was from $110 to $115 per acre. After the installation of the pipe line the land was estimated to be worth from $75 to $80 per acre. The estimated value of the Gibson land, which consists of one hundred forty acres, prior to the installation of the pipe line was from $140 to $150 per acre. After the installation of the pipe line the land was estimated to be worth $125 per acre.

There was testimony that the laying of the pipe line caused ridges in the land, rendering the cultivation of same difficult; that where disturbed the land is ''killed'' or rendered unproductive for a year or two thereafter; that the cultivation of the land would be subject to further interference if leaks in the pipe occurred; that such an occurrence happened in another line laid earlier under these tracts and not only prevented cultivation while the repairs were in progress, but that the escaped oil destroyed the productive character of the soil with which it came in contact and rendered its cultivation useless. Furthermore it was shown that where a pipe line of the character at bar is laid during wet weather damage is done to the cultivable character of the soil; also that the frequent patrolling of the line by plaintiff shown to have been necessary, and the making of repairs thereon when required, interfere with the unobstructed use of same by the owners, to their detriment.

I.   By their conduct the parties concede the validity of the statute (Art. 11, chap. 13, R. S. 1919) upon which this proceeding is based in so far as it authorizes private corporations to condemn land for the laying of pipe lines and the transportation therein of crude petroleum through this State. [Smith v. Glynn, 177 S. W. (Mo.) 850 and cases; State ex rel. v. McQuillin, 246 Mo. l. c. 592; Burns v. Ins. Co., 295 Mo. l. c. 694; State ex rel. Home Savings Ins. Co. v. Lee, 288 Mo. l. c. 707.]   This concession eliminates from consideration in this case what might have presented a serious question under the limitations of the Constitution.

II.   Texts and treatises attempt to state general rules from which the measure of damages may be determined in cases of the character at bar.   The difficulty in rely-ing upon such rules as forming a basis for a conclusion in a particular case, is that when traced to the adjudicated cases upon which they must rest, they are not infrequently found to be general deductions drawn from cases compositely considered, which, upon analysis, are, from their variant facts, not subject to such classification.   In short, it is sought to frame a general rule from a combination of dissimilar facts.   Neither in law nor in logic can a consistent con-clusion be drawn from inharmonious premises.   Nor do general statements as to the limitations upon such rules afford material aid in estimating the damages in a par-ticular case.   To declare, therefore, that damages should be direct and certain and such as may be known or may be reasonably expected to result from the invasion of premises by the condemnor and the consequent disturb-ance of the dominion of the owner and the construction by the former upon the premises invaded of the improve-ment or facility to be employed, lends little light in es-timating the damages in a concrete case, except to mark the boundaries of consideration.   Especially is this true where, as at bar, the damages sustained must be deter-mined from opinion evidence upon which the market value

*Measure of Damages.*

of property of necessity has its foundation. [St. L., Memphis, Railroad Co. v. Cont. Brick Co., 198 Mo. 1. c. 709.] Conceding the application, therefore, of the general rules referred to and that the testimony must be of the character mentioned, aside from these limitations, precedents, parallel in their facts, disclose certain well-defined standards to be observed in condemnation cases. While many of the cases cited have reference to condemnations of rights of way for railroads and involve the absolute and continued use of the right of way by the condemnor, the difference between that class of cases and the instant case is only one of degree in estimating the damages and does not involve a difference in the basis or principle upon which the estimation is made. To illustrate: the determinative tests in ascertaining the damages in railroad condemnation cases are, first, the damage done to the absolute taking of the right of way, and, second, the difference between the value of the land before the taking and thereafter. In cases as at bar a like standard is applicable in estimating the damages except that those assessed for the taking of the right of way itself must be minimized by the fact that the owner is not wholly deprived of the use of the surface of the right of way itself as in railroad cases. The rule adverted to furnishes the safest and most reliable standard from which such injuries may be estimated. A long line of authorities in this State sustain the application of the rule in railroad condemnation cases, and with the difference stated its application in the instant case accords with reason and affords a just basis for the determination of the damages. The rule, as most explicitly stated in these cases, is that when a part only of land is taken under condemnation proceedings the measure of damages is the difference between what was the fair market value of the entire tract before and after the appropriation in view of the use to which the portion condemned should thereafter be applied. [St. L. Belt Term. Ry. Co. v. Cartan R. E. Co., 204 Mo.

565 and cases; Mo. Pac. Railroad Co. v. Porter, 112 Mo. l. c. 368; Wyandotte, K. C. & N. W. Ry. Co. v. Waldo, 70 Mo. 629; Quincy, Mo. & Pac. Railroad Co. v. Ridge, 57 Mo. l. c. 601.]

The rule as applicable to the case at bar is comprehensively considered in St. Louis v. Hill, 116 Mo. 527, 21 L. R. A. 226, in which it is said, in effect, that anything which destroys or subverts the exclusive right of any person to freely use, enjoy and dispose of any determinate object, real or personal, constitutes a taking or destruction *pro tanto* of property, notwithstanding the possession and disposal thereof is not disturbed and there is no actual or physical invasion of the *locus in quo.*

III. Aside from the increased difficulty encountered in cultivating the land by reason of the ridges raised thereon after the laying of the pipes, the deterioration of the fertility of the soil on the right of way by leaving thereon non-arable clay, and the frequent patrolling of the land by plaintiff's employees, the evidence is negligible concerning the damages occasioned by the installation of the pipe line. Even as to these injurious incidents there is no substantial evidence as to the extent of the damages. However, when we come to consider the second element of damages or, concretely stated, the effect upon the value of the land other than that occupied by the right of way, there is no lack of evidence to sustain the conclusion that the laying of the pipe line across these lands materially depreciate their market value. The cogency of this evidence is ample, not only as to the number of the witnesses but the amount per acre of the depreciation, to render it unnecessary to enter into particulars in the presentation and discussion of the same. In the face of these facts no question can arise as to their sufficiency to authorize the submission of the case to the jury. Thus submitted, a proper element of damages as we have stated, is the depreciation or diminution in value of the market price of the land by reason

of the laying of the pipe line. [Met. St. Ry. Co. v. Walsh, 197 Mo. 1. c. 419; C. R. I. & P. Ry. Co. v. George, 145 Mo. 1. c. 46; Mo. Pac. Ry. Co. v. Porter, 112 Mo. 361; Mo. Pac. Ry. Co. v. Chrystal, 25 Mo. 544; Palmer v. Harris Co., 69 S. W. 229.] The finding of the jury is amply supported therefore, if based upon no other element of damages. There is a well-recognized rule of appellate procedure which had its origin in the uniform integrity accorded to judgments of courts of competent jurisdiction, including those in condemnation proceedings, that an appellate court will not disturb a judgment awarding damages in the presence of substantial evidence in support of same. [Mallette v. St. Louis, 236 S. W. (Mo.) 63; St. Louis v. Railroad, 272 Mo. 80; St. Louis v. Semple; 199 S. W. (Mo.) 967; Railroad v. Brick Co., 198 Mo. 1. c. 712; Zehner v. Milner, 172 Ind. 493, 24 L. R. A. (N. S.) 383; Boyne City v. Anderson, 146 Mich. 328, 8 L. R. A. (N. S.) 306; Henderson v. Lexington, 132 Ky. 390.] The finding being on a question of fact will not be disturbed, although the evidence may be conflicting. [In re Thompson, 127 N. Y. 463, 14 L. R. A. 52.]

IV. The instructions asked by the plaintiff and given by the court, supplemented by those given by the court on its own motion, clearly, fully and fairly submitted the issues under the facts and are all that the plaintiff was entitled to. Those asked by the plaintiff, and given, present in logical order the issues raised by the pleadings and leave no ground for conjecture as to the limit of the jury's duty. Those given by the court on its own motion correctly define the questions for the jury's determination in such a manner that the measure of their finding as to the damages and the limitations upon the same could not reasonably have been misinterpreted. It may be conceded that there was immaterial and irrelevant testimony admitted concerning speculative damages and others akin thereto which plaintiff had obligated itself to pay upon their infliction.

305 Mo.—43.

This testimony, however, was not of such a nature as to influence the verdict in view of the court's unmistakable limitations as to the basis of the jury's finding. No one reading these instructions can fail to understand that the damages authorized to be found must be limited to the injury inflicted by the laying of the pipe line and the depreciation caused thereby to the residue of the land. The verdict itself, so far as inferences in regard thereto can be drawn from its words, bears evidence of the fact that it was based upon the authorized limitation. Instructions 9 and 10 asked for by the plaintiff were properly refused. Technically considered they did not include all of the land of either of the defendants. Waiving this defect, their subject-matter was covered by instructions given.

No other errors assigned are of such magnitude as to require consideration.

The judgment of the trial court is therefore affirmed.

PER CURIAM:—The foregoing opinion of WALKER, J., filed in Division Two, is adopted as the opinion of Court in Banc. All concur, except *James T. Blair, J.*, not sitting, and *David E. Blair, J.*, who dissents and adopts as his dissent the opinion of HIGBEE, C., filed in Division Two.

DAVID E. BLAIR, J. (dissenting and adopting opinion of HIGBEE, C.).—The appellant is a corporation and engaged as a common carrier in the transportation of crude oil from the oil fields in Texas, Oklahoma and Kansas, by means of pipe lines laid underneath the surface of the ground, through this State to its refineries in Illinois and Indiana. On February 3, 1921, proceeding under Section 1791, Revised Statute 1919, appellant filed a petition in the Circuit Court of Randolph County, praying the condemnation of a right of way eight feet wide through a certain forty-acre tract of land belonging to Benjamin Shipp and Minnie S. Shipp, his wife,

and another forty-acre tract belonging to L. B. Gibson and Zadee Pearl Gibson, his wife, in which to lay and construct its pipe line underneath the surface of the ground; said strip is specifically described, and lies south of and adjoining the southernmost pipe line which appellant has heretofore laid and now operates across said tracts of land.

The petition alleges (1) that plaintiff will lay said pipe lines in said strips or rights of way at least twenty inches underneath the surface, so as not to prevent or interfere with the cultivation or use of said strips by the defendants except while plaintiff is engaged in laying, removing or repairing its said pipe lines; (2) that it will so lay said pipe lines as not to interfere with the drainage of said strips of land or the lands adjacent or adjoining thereto; (3) that plaintiff will at no time fence or inclose said strips of land, but same shall be left open so the defendants and their grantees shall at all times have unobstructed passage over them and the right to cultivate, use and enjoy said strips as parts of their farms in connection therewith, except only when plaintiff shall be actually engaged in laying or repairing said pipe lines on said strips; (4) that for any damage that may be done to growing crops on said right of way from time to time, if any, by the laying of additional pipe lines on said rights of way or the repairing of pipe lines thereon, or by the escape of oil, if any, onto said right of way or land adjoining thereto, plaintiff will compensate defendants, their heirs, assigns, etc., therefor, promptly, and (5) that if in laying or constructing said pipe lines or making repairs thereto plaintiff should commit any damage to defendants' adjacent or adjoining land, it will promptly pay therefor.

The court, on March 5, 1921, appointed commissioners who filed their report assessing $150 damages in favor of Shipp and his wife and $250 in favor of L. B. Gibson and his wife, which sums were paid into court and plaintiff constructed its pipe lines over defendants'

premises.   The commissioners' report, however, was thereafter set aside, on written exceptions filed thereto by the defendants.   On a trial before a jury on June 16, 1921, a verdict was found assessing the damages in favor of Shipp and his wife in the sum of $1000, and in favor of L. B. Gibson and his wife in the sum of $1400, and judgment was rendered accordingly, from which plaintiff appealed to the Kansas City Court of Appeals. Following our ruling in City of Moberly v. Lotter, 266 Mo. 457, 181 S. W. 991, that an action of this character involves title to real estate, the Court of Appeals transferred the cause to this court (240 S. W. 473).

Shipp and his wife own a farm of one hundred and eighty acres which they bought in March, 1917. It is a mile and a quarter long, lying north and south. Approximately eighty acres lie north of the pipe line, and one hundred acres south of it. The eight-foot strip for the pipe line crossing the farm from east to west is 1277 feet long, and contains .235 of an acre. Three other pipe lines cross the farm. The first and second were laid in 1913 or 1914, and occupy a strip six or seven feet wide; the third was laid about March, 1917, and the last pipe line, the line laid in this eight-foot strip, was laid as close to the south line of the three pipes as it could be laid. It runs about fifty feet north of Shipp's barn.

The Gibson farm contains one hundred forty acres. They bought it early in the year 1920. The eight-foot strip for the pipe line is 2221 feet long and contains less than one-half an acre. This pipe line was laid immediately south of and adjoining the six- or seven-foot strip in which the three pipe lines were laid between the years 1913 and 1917. Gibson testified:

"I believe I had the field next to the road in corn one year. I do not remember that I raised any other crops than corn. I raised corn two years. Crossed all three pipe lines in raising corn. There were ridges there, and one day they stopped me five days from plowing on

account of a leak.  That place I should judge was about fifteen or twenty feet.  Outside of that I had no trouble crossing.  I got it worked down.  I plowed across it with a breaking plow, after I disced it down.  There were ridges there.  I should judge it would be something about six inches high.  I had oats on it myself, and this other fellow had oats on it.  I still say it.  If he didn't cut his oats somebody else did.  They were cut with a binder.  When oats were sown the binder cut across there.  I guess he cut his wheat with a binder.  I say, I guess about it, because I didn't do it.  I am not guessing about the fact that wheat and oats were sown there, and I am not guessing about the fact that the binder went over it.  I am not guessing about the fact that corn was planted and gathered.  The very fact is that since I have known that land crops have grown on it, and that is true when Mr. McGruder owned it after the ridges were worked down.  I told Mr. Jeffries they were worked down the first year.  After you worked them down they interfered that year, but for crop growing I think it is more than a year.  It does not grow a crop where they dig it up; it kills the ground for a year or two   It takes a space of about two feet to lay this line.  They make a ditch a foot wide, lay the dirt on top of the bank, and they put it back after they lay the line.''

Shipp testified:  ''I have been over other lands having pipe lines running over them.  They cultivate across them.  Some places they don't have any trouble getting from one part of the farm to the other.  As a rule they get over them, plow and harrow over them generally.''

I.  It is insisted that the verdict assessing the damages at $1000 to the Shipp and $1400 to the Gibson farm, is grossly excessive and unreasonable.

The rules applicable to the assessment of damages in condemnation proceedings are very clearly stated in 20 Corpus Juris, 763, 767:

''Sec. 225.  In condemnation proceedings a landowner is entitled to recover for all damages, present and

prospective, which may· be known or may reasonably be expected to result from the construction· and maintenance of the improvement in a proper and legal manner, since there cannot be successive proceedings. In the absence of stipulation as to how the work is to be done, damages are assessed on the basis of the most injurious manner of construction which is reasonably possible. However, only such injuries ·as are capable of ascertainment at the time of the construction of the improvement should be considered.

''Sec. 226. The general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages, such as loss of speculative profits, will not be allowed.

''Sec. 227. Any fact which, by reason of the conditions upon which the property is taken, or the character of the improvement or the manner in which it is made, or the nature and situation of the land taken or of the residue, tends to ameliorate, counteract, diminish, mitigate or reduce the damages otherwise accruing to the landowner, may properly be considered in favor of the appropriator in the assessment of damages, although the benefit is not one necessarily accruing from the construction of the improvement. Thus, if the use sought to be appropriated is a restricted or limited use and one which will still reserve to the landowner some right in the property affected, such fact should be considered in assessing damages.''

This is the rule in Missouri. In St. Louis Ry Co. v. Clark, 121 Mo. 169, 197, we said:

''Upon an assessment by a jury, in case the road has already been constructed, it seems too plain to· require more than a statement of the proposition, that the damage should be ascertained in view of the condition in which the unappropriated land is left by the use actually made of the easement. This in no sense constitutes a

payment of damages in privileges, but is simply a reduc-
tion, or increase, as the case may be, of the damages on
account of the manner of constructing the road.

"Now, we are unable to note a distinction between
the supposed cases and the one under consideration.
Neither is inconsistent with the previous complete ap-
propriation of the land for the purpose of erecting,
maintaining and operating a railroad thereon.   Each
affects only the damages to be allowed.   No good reason
can be seen why the condemning company should not
have the right to announce, upon the trial, and have made
a matter of record, if not done in its petition, the manner
in which the right of way should be used; otherwise, the
jury would have the right to make the award on the basis
of the most injurious use to which the easement could be
lawfully applied in the construction and operation of the
road."

See also St. Louis Ry. Co. v. Knapp-Stout Co., 160
Mo. 396, 407, and St. Louis Ry. Co. v. Stock Yards, 120
Mo. 541 (10), 561.

The plaintiff sought to condemn an easement through
the defendants' lands for the limited and restricted uses
and purposes and on the terms and conditions expressly
declared in the petition; that is, an eight-foot strip im-
mediately south of and adjoining the strip in which the
three pipe lines had already been laid.   The plan reserved
to the owners the full and uninterrupted use of the strip,
save only when the plaintiff actually should be engaged
in laying, repairing or reconstructing the line.   It is ex-
pressly stipulated that the plaintiff shall not fence or in-
close the strip, but leave it open for the free and unob-
structed use of the landowner.   The evidence shows that
if the pipe is laid when the ground is wet, damage results
to the soil; that in all cases there is a ridge which causes
temporary inconvenience until it is worked down.   These
are proper elements to be considered in the assessments
of damages, as also the interruptions and inconveniences
that may result from patrolling the pipe lines and in mak-
ing repairs thereon.   But the farms are not cut up or

divided, as when a public road or railroad is laid out or constructed through a tract of land.

In Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 36 L. R. A. (N. S.) 456, 462, the court said: "In this strip a pipe line ten inches in diameter is to be buried and for this privilege the jury returned a verdict of $4000 in damages. It cannot be claimed that the laying of the pipe line injures in any way or damages the remainder of the farm. . . . This verdict is flagrantly excessive and out of all proportion to the real damages sustained."

In a learned treatise it is said: "The Legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial." [2 Elliott on Railroad (2 Ed.) sec. 983, citing Monongahela Ry. Co. v. United States, 148 U. S. 312; County Court v Griswold, 58 Mo. 175, and City of Kansas v. Baird, 98 Mo. 215, 11 S. W. 243, and other cases.]

In the circumstances of this case, considering the restricted and limited easement appropriated, it is difficult to conceive how the resulting damages could equal or exceed the value of the strip in which the pipe is laid under the surface of the ground. We think the assessments are grossly and unreasonably excessive.

II. Over the objections and exceptions of the plaintiff, the court admitted evidence that in laying the pipe line plaintiff's employees did not confine themselves within the eight-foot strip, but trespassed on the adjoining lands and that oil sometimes leaked from the pipes and killed the soil.

As we have seen, the damages recoverable must be direct and certain, and such as may be known or may be reasonably expected to result from the construction and maintenance of the improvement in a proper and legal manner. Contingent, remote or speculative dam-

ages are not allowed. [20 C. J. 763, supra; Met. St. Ry. v. Walsh, 197 Mo. 392, 407.] Compensation for trespasses on lands adjoining the strips appropriated are without the scope of the statute and would be remediable by independent actions, notwithstanding the condemnation and payment of the damages assessed. So, evidence that if oil leaks from the pipes it kills the soil, is speculative and outside the scope of the action.

In St. Louis Ry. Co. v. Mendonsa, 193 Mo. 518, 525, Judge Fox said: "But the commissioners in condemnation cannot take into consideration the possibility of the destruction of buildings that may be on the land at the time of the condemnation proceeding or that may be subsequently erected thereon, and speculate as to the damage that may be done to the owner by the destruction thereof, for the buildings may never be destroyed, and, therefore, that element of damage being purely speculative, the owner is afforded ample remedy under the statute to recover from the railroad any actual damage he may afterwards suffer by reason of the buildings on the land being afterwards destroyed, whenever such a loss occurs. Or, stated otherwise, the commissioners are authorized to take into account the depreciated value or salable value of the land caused by the risk to be apprehended from fires that may never occur. But for actual loss from the actual destruction of buildings or improvements on the land arising from fires communicated by locomotive engines, the owner is not entitled to recover against the railroad until and unless such loss actually occurs. And after loss the owner's remedy is under the statute or at the common law for the damage and loss which he will then have actually sustained." This was approved in Chicago Ry. Co v. Kemper, 256 Mo. 279, 295. [See 2 Elliott on Railroads (2 Ed.) sec. 991b.]

The learned trial court refused an instruction prayed by plaintiff that in arriving at a verdict they should not allow the defendants any sum by way of damages on ac-

count of the possibility or probability that at some future time plaintiff's pipe lines might break and oil escape upon their lands. We think this was error. No doubt the admission of the evidence, with the express sanction of the court, that oil might escape upon the defendants' lands, accounts for the extravagant verdict in this case.

III. The court refused instructions prayed by plaintiff that the jury should not allow the defendants any damages except as to the particular tracts described in the petition; in other words, the two forty-acre tracts over which the easement was appropriated.

In Chicago Ry. Co. v. Baker, 102 Mo. 553, the railroad ran diagonally through a farm of five hundred forty acres. Judge BLACK there said at page 559: "The damages to be allowed in cases like this, where the railroad appropriates a part of a body of land, are such as the landowner suffers to the body of land taken as a whole. The damages are not confined to the small government subdivisions over which the road may pass; and the corporation exercising the right of eminent domain cannot avoid payment of the damages done to the entire farm by selecting out and describing in his petition the forty-acre tracts through which the road may be located."

And in St. Joseph Ry. Co. v. Shambaugh, 106 Mo. 557, 569: "The inconvenience in going from one to another part of the farm, arising from the road, fences and gates, is, of course, a proper element of damages."

Here, there is no real or actual severance of either farm. The conditions of the appropriation forbid fencing of the strip by the plaintiff. It is required to be left open and uninclosed so as not to interfere with or obstruct the cultivation of either farm as an entire tract. The evidence adduced by the defendants shows that no other portion of either farm is affected or rendered less useful by reason of the laying of the pipe lines. Hence the court erred in the refusal of these instructions.

The court also erred in refusing plaintiff's instruction numbered 5, which reads:

The court instructs the jury that by the condemnation and appropriation of the strip of land across the defendant's farm described in the plaintiff's petition, to be used by the plaintiff as a right of way upon which to lay, construct, maintain and operate its pipe lines in the manner stated and described in said petition, the defendant will not be deprived of the ownership of said strips of land after the same has been condemned and appropriated, nor will the defendants be deprived of the possession of the same with the full right to cultivate and use the said right of way, but on the contrary the defendants will retain the possession of the same with the full right to cultivate and use the said right of way for any purpose and in any manner as he sees fit, subject only to the right of the plaintiff to enter upon said right of way for the purpose of laying, constructing, maintaining, repairing and operating its pipe lines on said right of way in the manner provided in plaintiff's petition.''

IV. Appellant insists that the court erred in admitting evidence on the question of the market value of the defendants' farms before and after the pipe lines were laid. Gibson testified that he was acquainted with places where oil had escaped from the pipes and gotten on the ground. He continued: ''Well, sir, it kills the ground for two or three years and then it makes a muddy hole and kinda makes a soft place and you can't go through it for ever so long—it is not only one place but several places; these joints are likely to move anywhere and they go in and correct it and if they have any oil they take it away from the line and burn it; and where they burn this oil will kill the ground just the same as where the oil runs over it.'' He testified that he was acquainted with the market value of real estate in the neighborhood of his and the Shipp farms. When asked what was the reasonable market value of

these farms on March 2, 1921, with and without this pipe line through them, plaintiff's counsel objected that the witness had not shown himself qualified. The objection was overruled and an exception saved. Gibson's opinion was that his farm was worth $150 per acre without the pipe line and $100 per acre with it; that the Shipp farm was worth $110 per acre without the pipe line and $75 to $80 per acre with it.

Shipp, over plaintiff's objection, testified that the market value of his farm in 1913, without this pipe line, was $35 to $40 per acre; in 1916, $55 to $60 per acre; in 1918, $70 to $75 per acre, and in March, 1921, was $110 to $115 per acre "without this eight-foot strip and right of way for the pipe lines," and with the pipe lines, $74 or $80 per acre.

The qualification of a witness is a preliminary question for the court. "In most instances, an owner is deemed qualified by that relationship to testify to the value of common classes of property." [22 C. J. 578, sec. 682.]

In Wabash Railroad Co. v. Cockrell, 192 S. W. (Mo.) 443, a condemnation proceeding, after reviewing a number of decisions, Roy, C., at page 446, said. "Thus we see that it has been with some reluctance that the present rule has been adopted that qualified witnesses 'may, in connection with the facts to which they testify, state their opinions as to the amount of damages to the property.'"

In that case the admission of the opinion of the witnesses on the question of the market value of the strip appropriated was held to be reversible error, because it was apparent from the facts stated by the witnesses that the opinion was based on a false premise. In the instant case, it is apparent that the opinion of the witness as to the market value was based, in part at least, on the possible or probable leakage of oil from the pipes and the resulting damages. This might or might not happen and, as an element of damage, was purely

State ex rel. Drainage District v. Hackmann.

speculative and, as we have seen, could not be considered by the jury in the assessment of damages. If leakage should occur and damage result, the remedy would be by an independent action.

What we have here said applies equally to the admission of opinion evidence of other witnesses. Other errors are complained of in the admission and exclusion of evidence and in the giving and refusal of instructions, but we need not consider them.