Lewis V. BEATY, James S. Beaty and Betty J. Beaty (Plaintiffs), Respondents,

v.

N. W. ELECTRIC POWER COOPERATIVE, Inc., a corporation (Defendant), Appellant.

No. 22733.

Kansas City Court of Appeals.

Missouri.

April 7, 1958.

---

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, C. P. Junge, Cole Camp, for appellant.

Delton L. Houtchens, Clinton, William Neff and Edwin Brady, Warsaw, for respondents.

CAVE, Judge.

This is an appeal from a judgment in favor of plaintiffs and against the defendant in the amount of $1,500.

The cause of action arose out of alleged damages resulting from defendant's construction of a power line across plaintiffs' farm. Plaintiffs were the owners of approximately 1,500 acres, and executed an easement in favor of the defendant for the purpose of entering upon said land and constructing, operating and maintaining an electric transmission line. The easement contained the following provision: "Grantors reserve the right to pasture and farm said easement, and any damage caused to the land and/or growing crops thereon or livestock thereon, by reason of the construction, maintenance, or operation of said electric line or system, shall be compensated for by grantee." At the beginning of the trial, it was stipulated that under this provision, the defendant would be required to pay for any damages "whether negligently caused or otherwise * * *". The right-of-way acquired was 100 feet in width and extended approximately 2¾ miles across plaintiffs' farm and included about 30 acres. The defendant erected the transmission line in 1953, and in doing so, caused certain damages.

This case was here on prior appeal; Mo. App., 296 S.W.2d 921. The evidence was detailed in that opinion, and since it is substantially the same in the instant case, we will summarize it as briefly as possible.

Plaintiffs' farm was primarily grassland and had an excellent stand or sod of bluegrass, which was used for the dual purpose of pasturing livestock and also stripping bluegrass seed. In constructing the electric line, the defendant used heavy machinery such as trucks, caterpillars, tractors, half-tracks and bulldozers. The evidence is that this machinery cut deep ruts and caused such upheaval of the soil within the right-of-way that it destroyed the grass thereon, and also the grass roots; that during the construction work the defendant caused a fire which destroyed 25 acres of bluegrass and its roots outside of the right-of-way; and also destroyed some fence and damaged certain small forest trees.

Many witnesses testified relative to the damages, but summarized such testimony is, in effect, as follows: Damage to fence, $175–$200; damage to trees, $400–$600; loss of pasture rental for the years of 1953 and 1954, $500; cost of reseeding 50 acres of bluegrass destroyed, $1,000–$1,200; loss of bluegrass seed crop for 1953, $694; and for 1954 seed crop, $710; and cost of grading and releveling the ground within the right-of-way, $625.

Defendant's evidence was that the damages were such less than the above amounts.

The jury returned a verdict for the plaintiff for $2,500, and pending defendant's motion for new trial, the court ordered a remittitur of $1,000, which was

made, and judgment entered for $1,500. The motion for new trial was overruled and defendant perfected its appeal.

It assigns but two points of error in this court. First, it attacks plaintiffs' instruction on damages; and second, claims that the court made prejudicial remarks concerning the admissibility of certain testimony.

The instruction is long and need not be set out in full. We will discuss the provisions that are criticized.

■ The first criticism is directed at that part of the instruction defining the measure of damages to the fence and forest trees. These elements are defined as being "the difference in value" of the fence and of the trees immediately before the fire and immediately thereafter. Defendant contends that the instruction should have read, the "reasonable market value" or "fair market value" of the fence and trees; and cites in support thereof Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S.W. 647, 649; Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783, 786; and Thomas v. Boone Electric Co-operative, Mo.App., 277 S.W.2d 640, 644.

The first two cases just cited relate to the establishment, by condemnation, of an easement across a farm. This is an injury of a permanent nature, and affects the freehold. In that kind of a proceeding, the rule is that the measure of damages is the difference in the reasonable market value or fair market value of the farm before and after condemnation. In the Thomas case, plaintiff's house was completely destroyed by fire. This court was discussing whether the admission of evidence of the rental value of the house, in determining its value, was erroneous. We were not discussing the correctness of an instruction. These cases did not involve the question of damage to fences or trees.

A fence and the kind and size of the trees in this case do not have a *market value* in the sense that term is generally used relative to personalty, such as livestock, harvested crops, automobiles, etc. So it was not necessary that the instruction use the words *reasonable market value* or *fair market value* as the measure of damages.

The following cases have discussed the measure of damages for the destruction of a fence: Graves v. Kansas City, Pittsburg & Gulf Rd. Co., 69 Mo.App. 574, 579; Wiggins v. St. Louis, Memphis & Southeastern Ry. Co., 119 Mo.App. 492, 95 S.W. 311; Steffens v. Fisher, 161 Mo.App. 386, 394, 143 S.W. 1101; and Matthews v. Missouri Pac. Railroad, 142 Mo. 645, 44 S.W. 802. These cases hold, in effect, that the measure of damages for the destruction of a fence is the actual value of the fence as it stood, before destruction.

In Alcorn v. St. Louis & H. R. Co., 219 Mo. 657, 284 S.W. 510, the court was discussing an instruction relative to the measure of damages for the destruction of forest trees—not fruit or ornamental trees, which cases must be distinguished—and held an instruction good which defined the measure of damages as the "difference between the reasonable value of such growing timber just before and after the fire, * * *". In Atkinson v. Atlantic & Pacific Rd. Co., 63 Mo. 367, at page 368, the court in reversing and remanding the cause on other grounds, said: "As the case is to be re-tried, it may be well to remark that the true measure of damages, as to the trees injured, is the difference between the value of such trees before the fire and their value after the fire". That is precisely what plaintiffs' instruction submits.

■ The question is, was plaintiffs' instruction prejudicially erroneous because it did not have some qualifying word such as "actual" or "reasonable" or "fair" preceding the word "value"? We think not. The difference in meaning, if any, of *value* and *actual value* is too tenuous to mislead or confuse a jury. See Hutchins v. Missouri Pacific Ry. Co., 97 Mo.App. 548, 554, 71 S. W. 473.

Defendant next contends that the instruction does not properly define the measure of damage to the bluegrass pasture. It contends that the correct measure of damage is "the rental value of the land and the cost of reseeding".

The evidence discloses that there was an excellent growth or sod of bluegrass; that approximately 50 acres of it was destroyed, including the roots, which would require reseeding; that this land was used for pasturing livestock and also the harvesting of bluegrass seed, which did not interfere with its value for pasture. The question of the proper measure of damages for the destruction of a perennial crop, as distinguished from an annual crop, caused a sharp conflict of opinion in this state. For many years, the St. Louis Court of Appeals held that where a perennial crop, including the roots, was destroyed, the measure of damages was the difference in the reasonable market value of the land before and after the destruction. Wiggins v. St. Louis, M. & S. E. Railroad Co., 119 Mo.App. 492, 95 S.W. 311; and Carter v. Wabash Railroad Co., 128 Mo.App. 57, 106 S.W. 611. However, this court in a number of opinions held that the measure of such damage was the reasonable rental of the area destroyed, and the reasonable cost of reseeding. Adam v. Chicago, B. & Q. Railroad Co., 139 Mo.App. 204, 122 S.W. 1136; Doty v. Quincy, O. & K. C. Railroad Co., 136 Mo.App. 254, 116 S.W. 1126; Mattis v. St. Louis & S. F. Railroad Co., 138 Mo.App. 61, 119 S.W. 998; and Crouch v. Kansas City Southern Railroad Co., 141 Mo.App. 256, 124 S.W. 1077. The Crouch case was transferred to the supreme court because it was in conflict with the above opinions of the St. Louis Court of Appeals; and the supreme court held that the view taken by this court was the proper one. See Couch (Crouch) v. Kansas City Southern Ry. Co., 252 Mo. 34, 158 S.W. 347, 46 L.R.A.,N.S., 555. Since that decision the Missouri rule as to such damage has been the difference in the rental value and the cost of reseeding the area of total destruction of a perennial crop. However, in the Mattis case, we also held that for the destruction of the standing matured crop of timothy hay the plaintiff could also recover "the value of the crop in the market, after allowing for expense in harvesting and marketing"; and that rule was approved in Adam v. Chicago, B. & Q. Railroad Co., supra. But we also held, in the Adam case, that the plaintiff could recover for only one crop, and not for future crops because of the uncertainty and speculative nature of such a claim. This element will be discussed infra.

In attempting to define the damages for the rental value and the cost of reseeding, the instant instruction reads: "In determining the plaintiffs' loss of pasture as the result of the loss of pasture and destruction of sod roots, if you so find, the measure of damages is the reasonable value of the probable growth of grass for grazing purposes during the 1953 and 1954 seasons, or such periods of time as you find plaintiffs were deprived of such pasturage, if any, and the reasonable cost of reseeding said bluegrass pasture."

■ All of plaintiffs' witnesses testified to the reasonable rental value of the pasture destroyed and the reasonable cost of reseeding the same. The question is, does the quoted language reasonably inform the jury of the proper elements of damage? Clearly it does so with reference to the reasonable cost of reseeding. Unquestionably, the instruction is poorly and awkwardly phrased with reference to the rental value. But it requires the jury to find the reasonable value for pasturage or grazing purposes; and all the evidence is that for such purposes the rental value would be a certain amount per acre. We do not believe that the jury was misled by the particular wording of the instruction or that defendant was prejudicially affected thereby.

■ However, there is an error in that part of the instruction which submits the element of damage for loss of bluegrass

seed crop for the year 1954. The evidence shows that the crop was destroyed in the summer of 1953, and under the rule laid down in Mattis v. St. Louis & S. F. Railroad Co., supra, and Adam v. Chicago, B. & Q. Railroad Co., supra, the plaintiffs would not be entitled to recover for a prospective seed crop in 1954. In the Adam case we said (139 Mo.App. 209, 122 S.W. 1137): "Crops that might have been grown in the future are an element too contingent and speculative to afford a basis for the assessment of damages in such cases". The plaintiffs testified that the loss of the seed crop for 1954 would amount to $710. We think the improper submission of damage to the prospective seed crop of 1954 is cured by the trial court ordering a remittitur of $1,000. The evidence on the other proper elements of damage was and is sufficient to sustain the judgment of $1,500. Thus reversal is not called for.

.·' Defendant next contends that the court committed prejudicial error in making comments relative to the admissibility of certain testimony of witness Vinyard. The situation which led to the court's remarks may be briefy stated as follows: Plaintiffs' evidence was to the effect that the heavy machinery and a fire had destroyed a certain bluegrass area in the summer of 1953; that only a portion thereof had been repaired and reseeded prior to the summer of 1955, although some repairing had been done prior to that time. Defendant's witness Vinyard testified that, sometime in 1955, at defendant's request, he had walked the full length of the right-of-way and observed the condition of the pasture, fence and trees. He was then shown a photograph marked "Defendant's Exhibit 1" and was asked the conditions shown by the photograph. This was objected to because it·was not shown when or where the picture was taken; and that the witness admitted he did not know when or where it was taken. There were objections and arguments between the attorneys and during that discussion the court said: "Well, the thing I am interested in is getting down to the time of this fire.

When he was out there in '55, the condition, as I understand, was altogether different. Now, if he can testify as to what the condition of that grass was in the spring of '53, that's what he should do." Whereupon defendant's counsel stated: "This witness is competent to testify as to what it would rent for for pasturing if it was bluegrass pasture, and I want him to assume it was the best bluegrass pasture you can possibly have." To which the court replied that that would be a proper question, but that it was not the one that was asked; and instead of asking the proper question, the witness was then asked: "Describe, if you will, that area on the north end of the line, that north 40 acres up there, so the jury will understand what it looked like", without fixing any specific time. Plaintiffs objected, and the court stated to defendant's counsel: "Well, that's the trouble, this man is testifying about something he never saw. Now, if he saw this land before the fire he can testify about it". This remark was objected to, and after further discussion between the attorneys and the court, the court stated: "Well, in connection with that, it goes back to the thing that I have been trying to have you both put in this record, what this witness saw there in '53. Now, if he has any knowledge of the condition of this pasture land up there in '53, that's what I want him to testify to. * * * if he has knowledge of that, that's what I am referring to, and if he has knowledge as to what this timbered bluegrass pasture looked like in '53 before this fire, that's what I want him to testify to." This statement was objected to and defendant moved to discharge the jury, which was overruled. Thereafter, the time when this witness made his observations and sought to testify was fixed as June, 1955, and he was permitted to testify fully as to what he saw and observed at that time.

Defendant's witnesses, Cole, Trenary and Lawlor, testified, without objection, to what they saw and observed when they examined plaintiffs' farm in 1955, and again in 1957.

Their testimony, as well as Vinyard's minimizes the damage done.

 The question is whether the above remarks of the court constitute prejudicial error. The defendant contends that the jury could reasonably infer from the court's comments that he did not believe the witness, and regarded such testimony unworthy of belief.

We do not believe the court's remarks are subject to such construction. When several pages of the transcript are read leading to the comments, it is apparent that the court and the attorneys were arguing whether the testimony was admissible without definitely fixing the time of witness' observations and whether he was confining his testimony to such time. When that issue was settled, the court permitted witness to testify fully on what he saw.

Of course, judges of trial courts must refrain from doing or saying anything during the conduct of a trial which would indicate to the jury their belief or disbelief in the credibility of a witness undergoing examination on the witness stand. He cannot be too cautious in concealing from the jury his convictions or impressions on all questions which should be left to the jury to decide. From reading this record, we are convinced that the attorneys and the court were uncertain, or not in accord, as to the time the witness was undertaking to describe the condition of the pasture. We do not believe the court's remarks, under the circumstances, indicate that he either believed or disbelieved the witness. He was undertaking to determine the admissibility of the evidence. After it was made clear as to the time and conditions to which the witness' testimony related, he was permitted to testify fully, and so were defendant's other witnesses.

An appellate court should not reverse any judgment unless it believes that error was committed by the trial court materially affecting the merits of the action; Section 512.160(2) RSMo 1949, V.A.M.S. Under all the circumstances, we do not believe the remarks of the court materially affected the merits.

We have examined the cases cited in the briefs and the factual situation distinguishes them. Some of the decisions held the remarks prejudicial and reversed the judgment; others held they were not prejudicial. But they all hold that the trial judge must be extremely cautious in making remarks which might influence the jury, and with that we agree.

Finding no reversible error, the judgment should be affirmed. It is so ordered.

All concur.