CITIES SERVICE GAS COMPANY, APPELLANT, v. BELLE V. PEAK, RE-SPONDENT.—54 S. W. (2d) 482.

Kansas City Court of Appeals. November 21, 1932.

Affirmed.

*J. R. Nicholson* for appellant.

*Lawson & Hale* and *Blackwell & Sherman* for respondent.

BOYER, C.—Plaintiff gas company by condemnation proceeding sought a right-of-way under and across lands of defendant for the purpose of laying and maintaining a six-inch lateral gas pipe line. The tenant of the land owner was also a party defendant. Commissioners were appointed to assess the damages and awarded the sum of $75 to the tenant and $2880 to the land owner. A settlement was made with the tenant and plaintiff filed exceptions to the commissioners' award of damages to the land owner because excessive and demanded a jury trial on the issue of damages to her. The venue was changed from Lafayette County, where the land was located, to Clay County where the case was tried, and the verdict of the jury was for defendant and assessed the damages at $2500. Judgment followed and plaintiff duly appealed.

Conceding that respondent is entitled to some compensation, appellant insists that the verdict is grossly excessive and made so on account of improper opinion evidence admitted over the objection of plaintiff. It is contended that the opinions of some of the witnesses on the measure of damages were based on speculative elements of damage and on elements of damage covered by covenants in the petition. The petition alleges that plaintiff is engaged in transporting gas by means of pipe lines laid under the surface of the ground for the purpose of distribution and sale of gas as a public commodity and for public use and convenience; that plaintiff proposes to lay a six-inch lateral gas pipe line to the city of Lexington through the land of the defendant. The land is described and consists of adjoining tracts amounting in all to 215 acres. It is alleged that plaintiff seeks to acquire a strip of land for right-of-way thirty feet wide for the purpose aforesaid and to lay its said gas pipe two feet beneath the surface of the ground, and the petition then proceeds:

"Plaintiff states that the said pipe line will be laid in such a manner as not to interfere with defendants' access to our cultivation of the soil or the drainage of the lands or of tracts adjacent

thereto, except during such times as the plaintiff may necessarily be engaged in laying, removing or repairing the line and plaintiff covenants not to lay any additional pipe lines on the right-of-way aforesaid without buying the right from the defendant; that plaintiff obligated itself in the event of the condemnation, to afford the defendants access at all times to the land and their right to the use of the same as part of their farm, in the same manner and to the same extent as if said line had not been laid subject to the right of entry at the point on defendants' land where the thirty feet right-of-way enters and leaves said farm for the purposes stated; that plaintiff further obligates itself to pay defendants any damages to the lands by reason of the installing or repairing of the said line by plaintiff or for any damages that may subsequently be done to growing crops on the right-of-way from time to time or by the escape of gas upon the right-of-way or upon adjacent lands. Plaintiff will not take any earth from the right-of-way or the adjacent lands of defendant to put on its pipe line without the consent of the defendant.''

The evidence discloses that the appropriation of the right-of-way was made in December, 1930, and the pipe line was laid during that month and later. The pipe line and the right-of-way follow a northwesterly direction and extend diagonally across the farm of defendant a total distance of 141.5 rods. Defendant's farm is not far from town; it is highly improved and is supplied with city water for stock; the soil is rich and is a well-developed state of cultivation. The 135 acre tract is in the northeast quarter of section 10, and adjoins the eighty-acre tract which is the north half of the northwest quarter of section 11. The ground is all utilized as one farm. The pipe line intersects the south line of the eighty-acre tract 1310 feet east of the southwest corner thereof, and intersects the north line of the 135-acre tract 420 feet west of the northwest corner of the eighty-acre tract. The ground through which the pipe line was laid was all tillable land except a ravine crossed by the pipe. The top of the pipe was laid two feet below the surface of the ground and the ditch filled with earth in such a manner as to leave a ridge about two feet wide and about a foot or eighteen inches high. A part of the line was laid in wet weather and the ground of the right-of-way was badly cut by trucks, transports or a ditching machine. There was some destruction of crops in building the line. Through the wheat field there was a space about eight feet in width where there was no wheat to harvest and about half a crop on the remainder of the right-of-way. In harvesting the wheat the binder was drawn over the ridge, but in places with difficulty on account of the obstruction caused by it. Other parts of the fields were later cultivated across the ridge with plow, harrow, and drill which caused the ridge to be reduced and the ap-

pearance of the field to become practically uniform. The condition in which the fields were left by laying the pipe, the creation of the ridge above it, and the obstruction caused thereby to the use of the fields is shown by numerous witnesses; and the appearance after cultivation is shown by many photographs as well as by verbal testimony. Both parties called many witnesses and the principal part of an extended record is directed to an inquiry as to damages measured by the difference between the reasonable market value of defendant's farm immediately before the appropriation of the right-of-way and immediately thereafter. The parties agree that this was the proper measure of damage and submitted the case on that theory as evidenced by instructions given at the request of both plaintiff and defendant.

Ten or more witnesses called by defendant were shown to be familiar with the character of defendant's farm, the location of the pipe line thereon, and of the reasonable market value of the farm and other lands in the vicinity. They testified to such value of the farm before and after the appropriation, and the difference in said values shows a diminution of from $25 to $40 per·acre. Witnesses for the plaintiff testified that there was no difference in the reasonable market value of the farm before and after the appropriation, and one witness testified that the value would be $3 less per acre after the appropriation.

The specific assignments and points of appellant against the reception of opinion evidence may be summarized as these: (1) The court erred in permitting witnesses to give their opinion of depreciation in value without first requiring a statement from each of the witnesses of the elements of damages considered by them as the basis of their opinions, or without requiring a hypothetical question containing only legal and competent elements of damage and excluding conjectural elements. (2) The court erred in refusing to permit plaintiff to cross-examine defendant's witnesses on the elements of damages taken into consideration by them before giving their opinions. (3) The court erred in refusing plaintiff's motion to strike out opinions of depreciated value given by defendant's witnesses, which opinions included speculative elements of damage.

It appears that the first point is more in the nature of an objection to the qualification or competency of a witness than to the legality of evidence sought to be elicited. But appellant does not urge that the witnesses were incompetent to give opinions as to market value and it could not successfully do so because the witnesses were shown to be qualified, and this is a preliminary matter to be passed upon by the court. [22 C. J. 523.] The witnesses testified to their knowledge of facts sufficient to form a basis for their opinions.

There was no objection to such testimony showing value prior to the appropriation. When each witness was asked to state the value after the appropriation the suggestion or objection was then made that the witness before giving his opinion should be required to state *all* the elements of damage considered by him as the basis of his opinion of depreciation, or in lieu thereof a hypothetical question excluding conjectural elements should be put to the witness. Counsel for plaintiff also demanded the right to cross-examine *before* the opinion was received. The demands of plaintiff were denied and counsel was informed that he might cross-examine *after* the opinion was received and this was done.

The questions suggested are novel and the appellant offers no authority to sustain its position. It is self-evident that a witness, who in the judgment of the court is qualified to give an opinion upon the values of real estate before and after it is subjected to the right of an easement, may testify to that opinion and he may state whether or not in his judgment the exercise of the *easement is a* benefit or damage to the property. It has been held that he may state the extent of the damage in dollars. [Rourke v. Railroad, 221 Mo. 1. c. 65.] In condemnation cases when a witness states that he is acquainted with the property, knows its value, and is able to express an opinion thereon, it is competent to receive such an opinion in evidence. [St. Louis K. & N. W. Ry. Co. v. St. Louis Union Stockyards, 120 Mo. 541, 25 S. W. 399; Funke v. St. Louis-San Francisco Ry. Co., 35 S. W. (2d) 977, 981.]

We can see no logic or law in the proposition that such a witness must first give reasons and state all the elements tending to support his opinion before the opinion is expressed. If one possesses the requisite knowledge upon which to base an opinion it is clear that a hypothetical question is inappropriate. The hypothesis for the opinion is supplied by known facts. Cross-examination orderly follows the giving of testimony and does not precede it.

The first witness who testified was the son of defendant. He was a mature man and had lived in the community of the farm all his life. He detailed facts showing a knowledge of the value of the farm lands and particularly of the farm in question, and his knowledge of the construction and location of the pipe line across the farm and the damage incident to laying it. He testified that the farm had been damaged on account of the pipe line running through it and on request enumerated various elements of damage, all without objection. Some of such elements were speculative. The witness stated, without objection, the value of the farm prior to the appropriation. When asked to state the fair market value of the land after the appropriation, plaintiff's counsel objected on the ground

that the opinion would be based on conjectural elements of damage. The court stated that some of said enumerated elements no doubt were, but there had been no objection made to the testimony. The court then requested counsel to state what elements he regarded as conjectural, and after a prolonged colloquy between court and counsel and after an amendment to the petition to confine ingress and egress to the ends of the strip, the court then stated to the witness various matters which should be excluded, and that he would not take into consideration the aggravation of the tenant; the likelihood of explosions; the right to cross and enter the right-of-way at any portion of the farm; and that dirt with which the ditch was filled would sink and make it necessary to take additional dirt out of the right-of-way. There was no request for the elimination of any other elements regarded improper and the witness then made his answer as to market value after the appropriation which showed a depreciation of from $30 to $40 per acre. Plaintiff's counsel then cross-examined the witness extensively, as was done in the case of almost all of the other witnesses. In the cross-examination of other witnesses and on the insistence of plaintiff's counsel that they enumerate various things considered a disadvantage in connection with the pipe line and as elements of damage, and on pressing the witnesses, in some instances they would enumerate some things which were speculative or conjectural in character. In one instance, upon specific objection of plaintiff's counsel to such evidence, the testimony was stricken out.

More than one witness for defendant testified that the mere fact that the company had the right-of-way across the farm and the right to enter was enough in his estimation to decrease the value of the farm to the amount shown by his evidence without considering any of the other elements at all. In some instances when it developed on cross-examination that a witness would state some improper element of damage, plaintiff would then move to strike out all of the opinion evidence of that witness. Such motions were overruled. It is apparently the position of appellant that the cross-examination had completely destroyed the worth of the opinion evidence as to market value, and that it should have been stricken out. We think that the cross-examination did not have such an effect, but that the value of the opinion of the witness was for the determination of the jury. If the motion to strike had been addressed to the particular part of the objectionable testimony and not to the opinion in its entirety the court, no doubt, would have granted the motion, as it did when such specific objection was made. "Where a witness shows adequate knowledge of the valuations involved, his evidence will not be stricken because it appeared on cross-examination that in estimat-

ing the value he took certain speculative possibilities into consideration." [11 R. C. L., par. 57, page 639, citing Southern Pac. R. Co. v. San Francisco Sav. Union, 146 Cal. 290, 79 Pac. 961, 106 A. S. R. 36, 2 Ann. Cas. 962, 70 L. R. A. 221.]

Even if it be assumed that incompetent evidence in the nature of speculative elements of damage was admitted, and other elements of damage which plaintiff obligated itself in the petition to pay for when they occurred were in the mind of the witness, still it would not be of such material consequence as to prejudice the rights of the plaintiff and demand a reversal of the judgment. We say this partly because there was no evidence of any substance as to the extent of any damage caused, or that might be caused, by any improper elements of damage named by witnesses. Such evidence could have had little or no effect upon the estimation of the damage made by the jury on the issue submitted to it for determination, which was the difference between the reasonable market value of the farm before and after the appropriation.

In the progress of the trial and on objections to testimony the court indicated that evidence for the consideration of the jury was a matter to be controlled by instructions, and we think that the substance of appellant's complaint is dissipated upon examination of the instructions under which the case was submitted. The defendant asked but one instruction which indicated the measure of damages as the difference which the jury would find between the reasonable market value of the whole tract of land before and after the appropriation of the easement. Plaintiff requested and the court gave ten instructions in its behalf, and no instructions were refused. Plaintiff submitted the same measure of damages as that adopted by the defendant. The jury was also instructed at the request of plaintiff that in estimating the damage to "take into consideration the quantity and quality of the land taken by plaintiff for its right-of-way, the use to which it is to be put by plaintiff, the manner of construction and laying of its pipe line, the increased difficulty, if any, the ridge of earth will cause defendant in the use of the right-of-way taken, the increased difficulty, if any, that the ridge of earth will cause defendant in the use of the entire farm, the damage, if any, caused by the patrolling of the line, the deterioration of the fertility of the soil on the right-of-way by leaving thereon nonarable clay and also take into consideration the right of defendant to use the entire right-of-way, subject only to the right of plaintiff to enter on said right-of-way to patrol, repair, relay or remove its gas pipe line and assess such damages therefor as a whole as you believe from the evidence will fairly compensate defendant in the light of all the instructions herein."

Plaintiff's instructions numbered 7 and 10 are the following:

"The court instructs the jury that plaintiff will be liable to defendant for the damage, if any, which may be caused in the future to the fences, land and crops of defendant, either on or off of the right-of-way by the maintaining, relaying or removing of the pipe line now laid or by the patrolling of said line or by the escape of gas upon the right-of-way or adjacent lands of defendant when said damages occur, if they do occur, and you cannot conjecture such possibilities to take them into consideration in estimating the damages done to the whole tract of defendant of 215 acres in this action."

"The court instructs the jury that the plaintiff is obligated to defendant by covenants in its petition not to go upon the adjacent lands of defendant in order to reach its right-of-way and not to take earth from the right-of-way or the adjacent lands of defendant to put on its pipe line, and not to lay additional pipe lines on its right-of-way without the purchase of such right from the defendant and in your consideration of the damages you will not take these elements into consideration."

The jury was instructed to the fullest extent requested by the plaintiff. There were no other instructions offered for the purpose of withdrawing alleged improper evidence from the consideration of the jury and it would appear that the instructions requested and given covered all of the subjects which plaintiff considered should have been withdrawn at the conclusion of the case. The jury was sufficiently confined by the instructions and could not have been misled into an award of unauthorized damages. The main element of damage as shown by the evidence was the diminution in the value of the land as a whole. Upon this subject the lowest estimate of the defendant's witnesses is double the amount of the verdict of the jury. There can be no reasonable doubt that the laying of a pipe line across the farm in question materially depreciated its market value, and that the jury was justified in rejecting the evidence of plaintiff to the contrary.

The finding of the jury has ample support if based solely, as we think it was, upon the depreciation in value of the land. This was a separate and distinct element of damage properly submitted. If there was incompetent evidence of speculative damages in other respects it was not of such a nature as to influence the verdict in view of the limitations made by the instructions. The error, if any, was harmless and could not be said to materially affect the merits of the case. [Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 673, 267 S. W. 647.]

What we have said, in effect, disposes of the point that the verdict is excessive. We think it is supported by an abundance of substan-

tial evidence. There is no sufficient reason to disturb it. [City Water Company of Sedalia v. Hunter, 319 Mo. 1420, 6 S. W. (2d) 565.] The judgment should be affirmed. The Commissioner so recommends. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.