STATE ex rel. C. M. BURCHAM, Drainage District No. 48 et al., Appellants,

v.

DRAINAGE DISTRICT NO. 25, etc. (Exceptions of H. O. Small and Lela Small), Respondents.

No. 7219.

Springfield Court of Appeals. Missouri.

Aug. 13, 1954.

Jones & Jones and Ford & Ford, Kennett, for appellants.

McHaney & McHaney, Kennett, Ward & Reeves, Caruthersville, for respondents.

McDOWELL, Presiding Judge.

This appeal is from a judgment for $5,033.45 in favor of defendants in a condemnation action brought by plaintiff to acquire levee and ditch right-of-way over land of defendants.

Plaintiff, Drainage District No. 48, instituted this action in condemnation to acquire 15.81 acres of land out of defendants' farm of 166.43 acres for levee and ditch right-of-way and flowage rights. Plaintiff seeks title to 12.05 acres and flowage ease-

ment in 3.76 acres, leaving 150.62 acres of the farm on the protected side of the proposed improvement.

The land over which the easement is sought is unimproved woodland; approximately 10 of the 12.05 acres taken is cleared land. There were no improvements on the land sought to be condemned.

The improvements contemplated are shown in plaintiff's exhibits (A) and (B). Exhibit (B) shows the contemplated new levee which crosses defendants' land and lies approximately a quarter of a mile east of old levee No. 25 and the proposed new drainage ditches to be built on the east side of the new levee. Neither the levee nor drainage ditches proposed had been constructed at the time of trial. However, designated levee No. 4 had been constructed. Defendants' land is shown by exhibit (B) to lie between old levee No. 25 and new levee No. 4.

The evidence is that old levee No. 25 had become inadequate and necessitated the new levee designated as No. 48, which levee is to be built pursuant to an Act of Congress in cooperation with local interests, taxpayers in the boundaries of Drainage District No. 48. Under the new improvement old levee No. 25 and the drainage ditch just east thereof are to be abandoned.

The Commissioners appointed by the court to assess damages for the right-of-way appropriated awarded defendants $1141.50 for the fee in 12.05 acres appropriated and $150.40 for easement in 3.76 acres. Both parties filed exceptions to the commissioners' report. Defendants assumed the burden of going forward. Judgment and verdict was for defendants for $5,033.45. Plaintiff appealed.

The sole issue tried was the amount of damage to defendants' farm caused by the appropriation of the right-of-way therefrom by plaintiff for the improvement sought to be made.

In our opinion we will refer to the appellant as plaintiff and respondents as defendants, although actually respondents

714

occupied the position of plaintiffs in the trial.

■ Plaintiff's first contention is that the trial court erred in admitting evidence of witnesses who said they had examined the plans and specifications for the improvements of Drainage District No. 48 and giving testimony that such construction would damage defendants' lands of approximately 150 acres which remained on the protected side of the levee and ditches constituting the improvement; because: none of said witnesses had shown any qualification to give testimony as to the result of the execution of such plans and specifications.

Defendants offered six witnesses who testified concerning damages to their land.

Each of these witnesses qualified as being landowners whose lands were located in the immediate vicinity of defendants' land. They were farmers who had spent many years in this overflow neighborhood and all qualified as to being acquainted with sales of land in this community within the last few years; most of them said within the last 1, 2, or 3 years and one witness, Arthur Massey, had been connected with the AAA Program of the government, measured crops on this particular land from 1936 to 1943 and had been on the same three or four times a year since that time. He testified that he was familiar with sales of land in this community of similar kind to that of defendants and that he was acquainted with the reasonable market value of defendants' land. There can be no question but what these witnesses qualified to give opinions as to the reasonable market value of defendants' land in April, 1952, just prior to the appropriation. There was little difference in their opinions. Some testified the land was worth $48,000 prior to the appropriation. Others testified $300 per acre and one said $250 per acre.

These witnesses then were shown plaintiff's exhibits (A) and (B) which set out the proposed improvements, the new levee which was to be built a quarter of a mile east of the old levee and across defendants' land and the proposed new ditch to be constructed just east of the new levee, together with other ditches that were to be built and new levee No. 4 which lies east of the new proposed levee. These exhibits disclose the entire proposed new drainage system to be constructed and every witness testified as to being familiar with the present drainage system and the changes to be made by the proposed new drainage system and levees. They were men who owned lands in that community for many years. They were familiar with the old levee breaks and with the seep water from the old levee. They were familiar with the St. Francis River and the overflow therefrom during floods and how such overflows affected the land in question. They were then asked their opinion as to what the reasonable and fair market value of the land of defendants would be immediately after the appropriation considering that the improvements had been made and testified that such damage would be about $16,000; some said $100 per acre; one said one-third less. All of the witnesses were shown to be well acquainted with the land of the defendants and with the proposed new improvements.

It is plaintiff's contention that these witnesses were not qualified to give opinions on questions involving scientific engineering without any qualifications shown to so do; that the testimony involved damages that were remote, contingent, uncertain, and speculative. In other words, plaintiff contends that lay witnesses, possessing the necessary experience, cannot state their opinion derived from observation, but must have special qualifications as engineers before expressing an opinion as to the effect of the construction of the levee and drainage ditches involved. With this contention we cannot agree.

■ The correct rule of damages where a part of the land has been taken in condemnation is the difference between the fair and reasonable market value of the land immediately before the appropriation and immediately after the appropriation. The appellate court will not disturb a judgment awarding damages in the presence of substantial evidence to support the

same. Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S.W. 647; State ex rel. Kansas City Power & Light Co. v. Gauld, Mo. App., 222 S.W.2d 940, 944, 945; State ex rel. State Highway Commission v. Leftwich, Mo.App., 263 S.W.2d 742.

■ The law in Missouri is that the question of the competency of a witness to give his opinion as to the damage resulting from condemnation is largely in the discretion of the trier of the facts, who saw and heard the witnesses.

In State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W. 2d 850, 852, the law is stated:

"In the direct examination of the witnesses, defendants' counsel called their attention to the condemnation plan outlined in the plaintiff's petition and set out in the second and third preceding paragraphs. On that basis the witnesses were asked to express their views on the money damage to the tract. On cross-examination appellant's counsel interrogated them concerning reasoning and grounds on which they had arrived at the conclusion that the depreciated value of the tract was in the amounts they had severally stated. These questions were asked with a view of determining "the admissibility of their testimony in chief on damages, under the decisions of our appellate courts, pro and con, cited below. * * *

"Appellant's first contention in its brief is that the trial court should have ruled the testimony last foregoing of these two witnesses was not sufficient to qualify them as experts competent to give opinion testimony on the value of the tract involved and the money damage resulting from condemnation. It relies on the Creed case, supra, [Missouri Power & Light Co. v. Creed, Mo.App.], 32 S.W.2d [783] loc. cit. 787(5) which stated that such testimony must come from witnesses 'who show themselves to be acquainted, both with the property condemned, and the effect of the construction and operation of the public utility upon it.' We think the court's ruling should stand. It was largely in the discretion of the trier of the facts, who saw and heard the witness.

"In our opinion it was not essential that the two witnesses should have gone on and inspected the land both before and after the condemnation. Witness Davidson had passed by the land many times before the condemnation and witness Thompson said farm land in the vicinity had been listed with him, though he had not sold any of it. Both inspected it after the construction of the line and doubtless could ascertain the physical effect of the work upon it. And as brought out by appellant's own counsel, if the witnesses had inspected the land before the condemnation started they would not have known where the transmission line was to be located. See State ex rel. State Highway Comm. v. Devenyns, Mo.App., 179 S.W.2d 740, 743(4, 5); Lee v. Allen, Mo.App., 120 S.W.2d 172, 173, 174(2–5); Funke v. St. Louis-San Francisco Ry. Co., 225 Mo.App. 347, 355(c), 35 S.W.2d 977, 978(6, 7), and the Peak case, supra [Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 54 S.W.2d 482]. See also: 22 C.J. Sec. 599, p. 507, § 682, p. 578, § 686, p. 586, pp. 587–591; 32 C.J.S., Evidence § 545, pp. 299–304."

In Lewis Eminent Domain, Vol. II, 3 Ed., page 1127, Sec. 656, the law is stated:

"This is a question the determination of which is left mostly to the discretion of the trial judge. There is no presumption that a witness is competent to give an opinion, and his competency must be shown. It must appear that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question, or the effect upon it of a particular improvement, beyond what is presumed to be possessed by men generally. These peculiar means may consist in a general knowledge of values derived from buying and selling, valuing and managing real estate in the town or county where the particular property is situated, or in a long acquaintance with the particular property and the neighborhood where it is situated, accompanied with the occupation or ownership of similar

property and especially if accompanied with a knowledge of sales of similar property; or in any matter which the court can see gives the witness some peculiar advantage in forming a correct opinion. It is not necessary that the witnesses should have been engaged in the real estate business. Intelligent men who have resided a long time in the place, and who are acquainted with the land in question and say they know its value, are competent, although they are merchants or farmers and have never bought or sold land in the place. * * *" Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860; Southern Missouri & A. Ry. Co. v. Woodard, 193 Mo. 656, 92 S.W. 470; Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 54 S. W.2d 482, 484.

■ In 32 C.J.S., Evidence, § 545, p. 301, the law is stated:

"A witness is qualified if he has such knowledge as enables him to form a better opinion than the jury or men in general. The knowledge required is such as is demanded by the nature of the subject matter, * *. *.

"In order to qualify the witness, it must be shown that he had adequate opportunity to learn the value of the realty. The witness must know the property to be valued, and the value of property in the vicinity, or of the same class; * * *."

In 32 C.J.S., Evidence, § 545, p. 305, under "Discretion of Court" the law is stated:

"The determination of the sufficiency of the witness' qualifications rests in large measure in the discretion of the trial court."

In State ex rel. State Highway Commission v. Bailey, 234 Mo.App. 168, 115 S.W. 2d 17, 26, the law is stated:

"The matter of determining whether or not such witnesses were qualified rested in the sound discretion of the trial court. State ex rel. State Highway Comm. v. Craighead, Mo.App., 65 S.W.2d 145; State ex rel. Highway Commission of Missouri v. Williams, 227 Mo.App. 196, 51 S.W.2d

538. We find nothing in the record to show that the court abused its discretion in this respect. The evidence shows that the witnesses mentioned were competent to give opinions with respect to defendants' property. The weight to be given to their testimony was, of course, a matter for the jury."

■ Plaintiff, to sustain its contention, cites 32 C.J.S., Evidence, § 454, p. 93. The law is stated in this section as follows:

"In all cases in which opinion evidence is admitted, it is essential that the witness should be possessed of adequate knowledge regarding the subject matter to which his testimony relates, and, where the testimony is as to an inference, it must also appear that the witness is qualified to draw the correct inference. Mere opportunity for acquiring the requisite knowledge is not sufficient, in the absence of facts which raise a satisfactory inference that the observer had sufficient capacity to coordinate his observations into relevant knowledge. However, extended opportunities for observation may well produce a special skill, denied to ordinary persons, even in the absence of special study."

There is nothing inconsistent with this statement of the law with that set out in the opinions under the holding of the Missouri cases. The witness must possess knowledge regarding the subject matter to which his testimony relates and he must be qualified to draw direct inference. He must have a special skill denied to ordinary persons.

An examination of the other paragraphs referred to in plaintiff's brief bears out the law as stated in the Missouri opinions.

Plaintiff cites Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, loc. cit. 605, 606, 607 and 608. On page 606 of 102 S.W.2d the court states the law:

" * * * Lay witnesses, possessing the necessary experience, may state their opinions when derived from observation, for want of better evidence, on certain subjects; for instance, time, quantity, dimen-

sions, speed and the like. Other subjects of litigation may embrace as one or more elements of a main determinable fact issue a subject or topic whereon the opinion of one possessing special qualifications will aid the jury in its conclusions; and the opinion of such a qualified witness is admissible as an aid to the jury. There are, however, subjects of litigation, though comparatively few, involving a main ultimate fact issue not within, but beyond, the general experience and common knowledge of mankind, for the determination of which 'scientific' experience is indispensable and the necessary testimonial qualifications may be acquired only through the systematic and thorough study of, training in, and application of knowledge to the science or art involved. The logic of such a situation (more forcibly than the logic which excludes opinion testimony where jurors possess the necessary experiential capacity) requires the establishment of the ultimate fact through the testimony of those possessing the necessary testimonial qualifications to observe accurately, reason correctly and report truly thereon."

The above opinion clearly defines the law covering the issue raised by plaintiff under this assignment of error. The main ultimate fact issue, that is, the damage that would result to defendants' land from the construction of the improvements proposed is not beyond the general experience and common knowledge of mankind and, therefore, scientific experience is not indispensable and necessary to qualify the witnesses to give their opinions as to such damages.

Plaintiff cites Scanlon v. Kansas City, 325 Mo. 125, 28 S.W.2d 84, 95. This case involves the question of whether a fall caused infantile paralysis. Clearly, the subject matter here required the witness to have scientific experience beyond the general experience and common knowledge of mankind to give an opinion and is no authority under the facts in the case at bar.

Phares v. Century Electric Co., 336 Mo. 961, 82 S.W.2d 91; Davis v. City of Independence, 330 Mo. 201, 49 S.W.2d 95;

Zeikle v. St. Paul & K. C. S. L. Railroad Co., Mo.App., 71 S.W.2d 154; Keehn v. D. R. F. Realty & Investment Co., 328 Mo. 1031, 43 S.W.2d 416; and Cox v. Missouri-Kansas-Texas Railroad Co., 335 Mo. 1226, 76 S.W.2d 411, cited by plaintiff, are all cases where the subject matter considered is such that special training and experience is required for opinion testimony. Most of such cases relate to medical evidence and most all of the cases cited by plaintiff are discussed in the Pedigo case.

The subject matter involved in the issue presented in these authorities is entirely different from that involved in the case at bar. It is essential that the witness should be possessed of adequate knowledge regarding the subject matter to which his testimony relates, and where the testimony is as to an inference, it must also appear that the witness is qualified to draw a correct inference. The observer must have sufficient capacity to coordinate his observation into relevant knowledge. Extended opportunity for observation may well produce a special skill, denied to ordinary persons, in the absence of special study.

The witnesses who testified as to damages sustained by reason of the appropriation of right-of-way and the construction of the improvements proposed, were shown to have adequate knowledge regarding the subject matter and qualified to draw correct inferences. They were landowners, men who were acquainted with the sale values of property of similar kind to that of defendants, were experienced in matters of drainage and overflow in this particular community and were shown to have sufficient capacity to coordinate their observations into relevant knowledge. These witnesses had a special skill, gained from long experience in dealing with overflows and drainage matters.

We find that the admissibility of the testimony was largely in the discretion of the trial court who saw and heard the witnesses.

Under plaintiff's first allegation of error it is contended that such testimony permitted the jury to take into consideration

remote, contingent, uncertain and speculative damages.

To support this contention 29 C.J.S., Eminent Domain, § 154, p. 1013 is cited. Under this section the law is stated:

"The general rule is that damages for condemnation, to be recoverable, must be direct and certain, or proximate, so that contingent, remote, imaginary, speculative, or merely possible damages, such as the loss of speculative profits, or recovery in advance for torts which may be committed, will not be allowed."

Plaintiff cites City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 153. In this case the law is stated:

"In a case such as this, where only a part of the whole property is taken, the owner is not in all events restricted to compensation for the part actually taken (which frequently may constitute the least amount of the entire injury done), but he is also entitled to recover for whatever consequential damages may proximately result to the remainder of his land by reason of the taking of a part. The entire tract of land is to be considered as a whole; and the measure of damages, as the parties are agreed, is the difference in the reasonable market value of the entire tract before and after the appropriation of the part actually taken for the improvement. From a practical standpoint, this is merely to say that the damages sustained are to be regarded as a unit, although made up of integral parts—the value of the land taken, and the injury to the remainder; but before damages may be recovered upon the theory of injury to the remainder, they must be direct and certain at the time of the appropriation, since if they are but remote or speculative, they are too uncertain to be taken into account in estimating the depreciation in the value of the land.

"* * * Consequential damages are of course not limited to physical injury to the remainder of the property, and the question, therefore, is whether the evidence of hindrance to expansion was direct and certain, and related to a then existing fact materially resulting in a depreciation in the value of the whole property as of the date of the appropriation.

"In estimating the amount of consequential damages sustained, or, in other words, the amount of the depreciation in the value of the land, the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same. The use to which the property has been devoted, and its capability or special adaptation for such use, are of course primary elements to be taken into account; and anything which is directly injurious to such capability or special adaptation for a particular use, and thereby affects the market value of the property, is therefore competent to be shown as a legitimate factor in bringing about the total damage sustained for which it is contemplated that the owner shall receive just compensation."

We think it unnecessary to state the holdings of all of the authorities cited by plaintiff on this proposition of law. The law is well stated by the St. Louis Court of Appeals in the case last quoted from. The opinion of the witnesses as to damages resulting from the improvements proposed must be based upon factual matters. The witnesses' testimony complained of based their opinion as to resulting damages from the improvements in part on the fact that the levee to be erected brought the flood waters a quarter of a mile closer to defendants' land; that the ditches to be erected under the proposed improvement changed the drainage from its present condition and caused it to flow across defendants' land and greatly increase the amount of drainage which would flow on the east side of the new levee. They gave their opinion that seep water would damage the entire farm. These are facts of which men experienced in overflow lands know. A part of said testimony might have been objectionable and, in most cases where objections were made, the trial court sustained the objections. Every witness who testified

was qualified as to his personal knowledge of the conditions existing in this drainage area and as to land values and we think there is no merit in plaintiff's contention under this assignment of error.

In plaintiff's argument, page 37 of its brief, it complains of an answer given by defendants' witness on cross-examination where the witness stated that this construction was going to ruin the farm and further testified that "the levee coming through there was going to more or less ruin the whole thing anyway". Plaintiff objected to this testimony and moved that it be excluded. The objection was sustained and the court instructed the jury to disregard the testimony. This testimony was given on cross-examination in answer to question as to why defendants moved certain improvements on their land. Most of all the complaints made by plaintiff go to questions that the witnesses did not possess engineering ability which plaintiff claimed was necessary regarding the subject matter at issue. With this contention we do not agree. An examination of the testimony given shows that where plaintiff objected, the objections were sustained in most instances. We think that there was no reversible error committed.

■ Under points II and III, which complain of the trial court's refusal to permit plaintiff's counsel to cross-examine witnesses and of the defendants' witnesses fixing damages on a per acre basis, were seemingly abandoned. No authorities were cited.

As to the question of fixing the damage on a per acre basis there is no merit. Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 54 S.W.2d 482, 483; Texas-Empire Pipe Line v. Stewart, 331 Mo. 525, 55 S.W. 2d 283, 285.

■ On the question of cross-examination, we find that if any error were committed it was harmless.

Under assignment of error No. IV, plaintiff claims that the verdict is excessive.

In 15 Am.Jur. par. 205, page 621, the law is stated:

"* * * As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law." Neff v. Cameron, 213 Mo. 350, 111 S.W. 1139, 18 L.R.A.,N.S., 320.

In Moehle v. St. Louis Public Service Co., Mo.App., 229 S.W.2d 285, 292, the law is stated:

"It is the settled law of this state that an appellate court should not interfere with the amount of a judgment for damages for personal injuries which has been allowed to stand by the trial court unless the amount is so grossly excessive or unmistakably beyond the bounds of reason as to be shocking to the judicial conscience. Hurst v. Chicago, B. & O. R. Co., 280 Mo. 566, 219 S.W. 566, 10 A.L.R. 174; * * *."

There is no testimony here that would justify the court in holding that the judgment is excessive.

Judgment affirmed.

BLAIR and STONE, JJ., concur.