STATE of Missouri, Respondent,

v.

Louis Gene MENARD, Appellant.

No. 47443.

Supreme Court of Missouri,
Division No. 1.

Feb. 8, 1960.

Jack V. Muehlenkamp, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Louis Gene Menard, was found guilty of burglary in the second degree and stealing, with a prior felony conviction, and hence the maximum penalties of ten years' imprisonment for the burglary and five years' imprisonment for the stealing were imposed. See §§ 560.070, 560.110 (pocket parts Vol. 41) and 556.280 RSMo 1949, V.A.M.S. Defendant has appealed.

The required elements concerning the prior convictions were admitted by the defendant. There is also no dispute about the fact that the Rollaway Service Station (owned by Paul McNally) located at 2863 South Jefferson Street, St. Louis, Missouri, was burglarized on the night of September 5 or the early morning of September 6, 1958. Entry was made by breaking the glass in a window located at the northwest corner of the building. An inside lock on an overhead door was also broken so that the door could be opened and a panel truck (parked on the wash rack) driven out. The burglars were able to load Mr. McNally's safe into the truck and remove it from the premises. The safe contained about $545 in cash, checks in the amount of approximately $200, and certain other personal property.

William Vogt lived at 5260 Fyler, St. Louis, which is across the street from the Arsenal Street Sanitarium. On the morning of September 6, 1958, he arrived home from work at about 2 a. m. and sat for a time on the front porch with his wife. At about 3 a. m. he observed a panel truck being driven out of the Sanitarium grounds. Shortly thereafter he heard a "lot of pounding" in the vicinity of the baseball field on the Sanitarium grounds and called the police. Within ten minutes several patrol cars and five or six policemen were in the area.

The truck (with the name Rollaway Service Station printed thereon) was found parked on Fyler. Officer Tumminello received a radio dispatch that the truck had been involved in a burglary and was supposed to contain a safe. The officer immediately searched the nearby Sanitarium grounds and found the safe on the baseball field. "It was on its back facing up with a crowbar still in the door where it had been badly damaged; didn't appear to have been opened." Several screw drivers and a sledge hammer were found nearby. A number of police officers began searching the area for the persons who had been attempting to open the safe. Defendant was arrested while crossing Brannon Avenue at a point about 150 yards from the place where the safe was found. He was perspiring "profusely" at the time of his arrest. He was taken to the district police station where he was asked to remove his clothes and they were placed in a bag and forwarded to the police laboratory.

When Mr. McNally arrived at the Sanitarium grounds shortly thereafter one of the police officers completed the operation of prying the safe door open and the money and other valuables heretofore mentioned were found therein.

William Secunda, a chemist in the police laboratory, testified as an expert witness for the State. In regard to his qualifications he stated that he had a BS degree from the University of South Carolina and an MS degree from St. Louis University; that since 1956 he had been working in the St. Louis police laboratory and had made between 300 and 500 examinations of specimens of paint and had analyzed and examined approximately 150 specimens of glass.

The witness further testified that when he made an examination of defendant's clothing he found some small particles of glass and particles of putty with red paint on them in the pocket of defendant's shirt; that on one of defendant's shoes he found a particle of paint consisting of three layers which were black over yellow over gray; that for purposes of comparison he then went to the Rollaway Service Station and obtained samples of glass and putty with red paint on them from the broken window, and specimens of paint from the body of a truck which was stored along the outside wall of the building adjacent to the window that had been broken; that he obtained samples of paint and wood fragments from an inside door panel which apparently had been damaged during the burglary. After returning to the laboratory Mr. Secunda made certain tests and examinations of the various samples from which he formed certain conclusions detailed in his testimony. He stated that the paint taken from the truck body was black over yellow over gray, the same colors as the sample taken from defendant's shoe; that he made a microscopic comparison of these samples and found that the samples of paint taken from the shoe and from the truck body were identical in thickness, sequence of color, gloss and texture, and expressed the opinion that the two samples were of common origin. Over objection (which will be hereinafter discussed) he was permitted to testify concerning the probability of the sample from the shoe having come from some place other than the truck. He explained in detail the method by which he arrived at an opinion in that respect and stated that it was not possible to give the exact probabilities but that a conservative estimate would be one chance in a million. The witness then stated that he compared the particles of glass removed from the filling station window with particles taken from the pocket of defendant's shirt and made tests concerning the density and index refraction of those particles and found them to be identical in both respects. He expressed the further opinion that the chance of the glass particles in defendant's pocket having come from some place other than the filling station window would be one in ten thousand. He also made a comparison of the red paint and putty obtained from the rim of the broken window with the specimen taken from defendant's shirt pocket and found these specimens (except for thickness which could not be compared) to be identical in all microscopic detail; that there was one chance in one thousand of the sample of red paint and putty found in defendant's pocket having come from some other source.

The witness further stated that he had obtained a specimen of green paint from the defendant's trousers which he compared with a specimen taken from the panel of an inside door at the station; that these specimens were olive green over pastel green, followed by some white, and that a comparison of same disclosed that they were identical in sequence of color, texture and gloss, and that the probability of the green specimen found on defendant's trousers having come from some place other than the door in the filling station was conservatively one chance out of one hundred thousand. Mr. Secunda expressed the further opinion that when considered in combination the odds against all of these items which were found upon one person's clothing having come from some place other than the filling station would be one chance out of a billion. The witness made microscopic photographs of certain of these samples and the slides of the samples that were compared were shown on a screen to the jury so that the jurors could see the comparisons involved in the testimony of the witness.

Defendant denied any participation in the burglary. He testified that he spent the evening of September 5 in a bar and became "pretty well intoxicated"; that about 11 or 11:30 p. m. he took a bus to the vicinity of "the Old Folks Home out on Russell" and walked around looking for the home of a friend on Southwest Avenue from whom he intended to collect a debt. He had not located Southwest Avenue at the time he was

arrested. He also presented evidence to the effect that he had replaced a window pane and had done some painting at the home of a relative a few days before his arrest and that he had done that work in the clothes he was wearing at the time of his arrest.

During the testimony of Mr. Secunda regarding his comparison of the specimen of paint taken from defendant's shoe with the one taken from the truck body the following occurred: "The Court: Are you in a position, Mr. Secunda, as a chemist to tell the jury whether or not in your opinion as chemist, your experience and schooling you had experience over in the laboratory, if these two laboratory items we are referring to came from the same place? The witness: Yes, sir. The Court: They did? The witness: Yes, sir. Mr. Brazil: Your honor, I object to that question. I don't think he is qualified to say they came from the same place. He can only say they are somewhat similar—he cannot say they came from the same place. The Court: I will overrule that objection."

The first point briefed by defendant is that the court erred in overruling the foregoing objection because "it allowed a conclusion from the witness as to an ultimate fact at issue which was in the province of the jury to determine and not within the province of that witness." We do not agree. In the recent case of State v. Paglino, Mo.Sup., 319 S.W.2d 613, 623, we quoted with approval the following: " 'An expert opinion expressed by one properly qualified and based upon sufficient means of knowledge is evidence. Scanlon v. Kansas City, 325 Mo. 125, 149, 28 S.W.2d 84, 95 [13, 14]. The *province* of the jury is to hear all of the evidence including opinion evidence, to weigh it all, and to decide the issues. Thus an opinion (evidence) cannot "invade the *province* of a jury," and this [is true], even though the opinion is upon the very issue to be decided. An objection that an expert opinion invades the province of the jury is not a valid one.' " Moreover, an examination of all of the testimony of

Mr. Secunda discloses that the same opinion had been expressed by him, without objection, prior to the admission of the instant testimony and hence, in any event, the ruling complained of would not have constituted prejudicial error.

The next contention of error is stated in defendant's brief as follows: "The court committed error in allowing state witness, police chemist William Secunda, to testify in mathematical terms as to probabilities when there was not a sufficient showing that he had been qualified to do so. Appellant contends that the court abused its discretion in allowing this testimony." When the witness was first asked to express an opinion as to the probability of the paint sample found on defendant's shoe (which the witness had stated was identical with the sample taken from the truck body at the station) having come from some place other than the truck body, the defendant made a number of objections, the substance of which was that the question of probabilities was not a proper subject for expert testimony and that the mathematical computation of probabilities was for the jury to determine and it was not for the witness "to say what the probabilities are." When these objections were overruled it was agreed that such would apply to any similar question thereafter asked. The witness then gave his answer to the effect that the probabilities of defendant picking up the sample at some other place would be conservatively estimated at "one chance in a million." He was then asked to explain how he had arrived at that figure and it was in the course of that explanation that defendant's counsel interposed the following objection, which the court overruled: "Mr. Brazil: Your honor, I object on the ground this gentleman is not qualified as a witness in statistics and probabilities."

The question as to whether the matter of probabilities (under the facts and circumstances here shown) is a proper subject for expert testimony is not raised upon this appeal. As heretofore quoted, the

contention here is that the witness had not been shown to have been qualified to give an opinion as to the mathematical probabilities in question. We think the objection upon which that contention is based came too late. As stated, the witness had already given his opinion and was in the process of explaining his method of arriving at same when the objection was made. No motion was made to strike out the answer that had previously been given and the objection was not thereafter renewed when similar questions were asked in the remainder of the examination of the witness. The qualification of an expert witness is a preliminary matter to be passed upon by the court. Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 54 S.W.2d 482, and, of course, any objection in that regard should be made before the witness is permitted to state his opinion. However, we observe, ex gratia, that "the determination of whether a witness is qualified to give particular testimony rests largely within the discretion of the trial court, although such determination is reviewable for abuse." Davis v. Gatewood, Mo.Sup., 299 S.W.2d 504, 511. Mr. Secunda was shown to have a Master of Science degree and was a qualified and experienced chemist. It is common knowledge that a chemist must have a reasonable knowledge of the science of mathematics. It would therefore seem that the trial court did not abuse its discretion in ruling that the witness was qualified to testify as an expert concerning the mathematical probabilities in question.

■ The third contention of the defendant is that the court erred in failing to sustain his motion for judgment of acquittal filed at the close of the State's case. The precise point is that the State failed to make a submissible circumstantial evidence case because it failed to present evidence to negative the possibility that the specimens of paint, putty and glass found on defendant's clothing were inadvertently dropped on defendant's clothing by officers or other persons who had been at the scene of the burglary or mixed up in the laboratory. No authorities are cited in support of that contention and we have concluded that it is not supported by the evidence. Defendant was arrested by Officer Heusmann who had not been to the service station. He was taken to the district police station where he was placed in a private room and asked to remove his clothing. The clothing was then placed in a bag by Heusmann and the bag was closed by wire staples and sent to the laboratory. It therefore appears that there was no opportunity for the specimens in question to have been inadvertently dropped on defendant's clothing. In that connection it is also significant that a number of the specimens were found in defendant's shirt pocket. The testimony of Mr. Secunda indicates that all of the specimens were identified and carefully handled by him. The evidence affords no basis for the conclusion that the specimens may have been inadvertently "mixed up" in the laboratory. We rule this point against defendant.

■ The final contention is that the court erred in admitting evidence of the specimens taken from defendant's clothing as the search of said clothing and the seizure of those particles was unreasonable under Art. I, Section 15, Missouri Constitution, V.A.M.S. Defendant's motion to suppress was overruled, as was his objection to such evidence at the trial. He does not contend that his arrest was unlawful and frankly concedes in his brief that where the arrest is lawful "the rule seems to be that the arresting officers may lawfully search him and take from him articles of evidentiary value." Defendant has correctly stated the established rule in this state. State v. Edwards, Mo.Sup., 317 S.W. 2d 441. But defendant says that, nevertheless, "the search was unreasonable in the light of the microscopic nature of the particles involved coupled with the fact that the State made no showing that particles supposedly taken from defendant's clothes were not inadvertently dropped on the clothes by officers who were at the scene of the burglary." He has cited no

cases in support of that contention. We have already disposed of the latter point stated in the quoted portion of his argument in our discussion of the third point raised in defendant's brief. We are unable to see in what manner the microscopic nature or size of the particles would affect the basic rule of law which is applicable in the situation presented. The contention is without merit and is ruled adversely to defendant.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial or presented in the brief discloses no error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.